A04A0934. SORROW v. HADAWAY et al.

(604 SE2d 197)

RUFFIN, Presiding Judge.

Susan Sorrow sued James F. Hadaway, individually and d/b/a Hadaway Realty Company, and Carlton North, individually and d/b/a North Development & Construction, for compensatory and punitive damages relating to a trespass on her property. Hadaway and North both moved for summary judgment, asserting that they were not responsible for the trespass and any resulting damages. The trial court granted the summary judgment motions, and Sorrow appeals. For reasons that follow, we affirm.

Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law.[1] We review the trial court's grant of summary judgment de novo, construing the evidence and all reasonable inferences in a light most favorable to the nonmovant.[2]

---

[1] See *Jacobs v. Thomson Oak Flooring*, 250 Ga. App. 56, 57 (550 SE2d 465) (2001).

[2] See id.

Viewed in this manner, the record shows that Sorrow lives in a subdivision partially developed by Hadaway. In 1995, Sorrow purchased from Hadaway the lot next to her home. She intended to keep that lot, identified as lot 6A on the building plat, undeveloped and in its natural state.

In 1996, Hadaway decided to have the undergrowth removed from several lots that he owned in the subdivision so that prospective buyers could see the "lay of the land." Hadaway contracted with North to perform this work, which is termed "brushing." North in turn subcontracted the work to Jonas Bailes, who actually brushed the lots.

After Bailes brushed a lot across the street from Sorrow's land, Hadaway asked North to brush lot 5A, which is located next to the undeveloped property owned by Sorrow. Hadaway testified that he met North in the subdivision, showed North lot 5A, and also pointed it out to North on the plat. Hadaway admitted that he did not walk the property lines with North, but asserted that the lines were clearly identifiable by stakes in the ground. Sorrow also testified that the boundary between her property and lot 5A was marked with stakes, as well as surveyor ties and "utility things."

As with the other lots, North subcontracted this work to Bailes. Instead of brushing lot 5A, however, Bailes brushed part of Sorrow's undeveloped property on lot 6A, destroying vegetation, knocking down trees, and damaging a creek. When Sorrow realized that Bailes was on her land, she instructed him to stop work, and Bailes stopped immediately. Neither North nor Hadaway was present when Bailes brushed Sorrow's land.

Sorrow sued Hadaway and North, alleging that they "caused their agent" to trespass on and damage her property. Sorrow further alleged that Hadaway damaged her property "by failing to properly [re-seed] areas which were damaged and by failing to remove a silt fence which he had caused to be placed on [her] property." Sorrow prayed for both compensatory and punitive damages. Hadaway and North moved for summary judgment, asserting, among other things, that they were not responsible for the actions of Bailes, an independent contractor. Hadaway also argued that the silt fence referenced in Sorrow's complaint was not located on Sorrow's property and had been removed. The trial court granted summary judgment to both defendants. We find no error.

1. Under OCGA § 51-2-4, "[a]n employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer." In granting summary

judgment, the trial court found Bailes to be an independent contractor. It further concluded that neither Hadaway nor North is liable for damages caused by Bailes' conduct.

Sorrow does not challenge the trial court's characterization of Bailes as an independent contractor. Instead, she argues that Hadaway and North can be held directly liable for failing to "ascertain and communicate [to Bailes] the location of the boundary between Hadaway's land and Sorrow's." She also claims that the defendants' conduct falls within OCGA § 51-2-5 (1), a statutory exception to the rule shielding employers from liability for torts of independent contractors. We disagree on both counts.

(a) As Sorrow notes, "OCGA §§ 51-2-4 and 51-2-5 limit an employer's vicarious liability only[ ] and do not apply to a claim arising from the employer's own conduct."[3] Furthermore,

> [i]t is well established that in determining whether an independent contractor is to be held liable for damages resulting from the work in connection with which he has been employed, it is usually necessary to look for guidance to the question whether the injury resulted from the improper plans or directions by which his employment was defined, or from the improper execution of work properly planned. In such cases, if it appears that the contractor has followed the plans and directions of his employer and injury has resulted, the employer, and not the contractor, is to be held liable. For unskilful or negligent execution of the work the contractor (and usually not the employer) is liable.[4]

On appeal, Sorrow relies on North's deposition testimony to argue that a fact question remains as to whether Hadaway and North properly instructed Bailes regarding the boundary line between lots 5A and 6A.[5] Asked whether Bailes crossed onto Sorrow's property, North responded:

> The best that I can recall, he probably did because there was a dispute, and I didn't know exactly where the line was there. Well, I knew approximately where it was. . . . I don't remember [the line between lots 5A and 6A] being marked at all. That was one of the problems. It was kind of hard to tell.

---

[3] *England v. Beers Constr. Co.*, 224 Ga. App. 44, 47 (2) (479 SE2d 420) (1996).

[4] *Jasper Constr. Co. v. Echols*, 198 Ga. App. 127-128 (400 SE2d 660) (1990).

[5] The record contains no testimony from Bailes, who, according to Sorrow, is deceased.

North further testified that he informed Bailes where to brush, "[b]ut [Bailes] just went over the line." As North explained: "I let [Bailes] know where the line — I mean, I don't ever send them out there unless I know pretty much where the line is. And we always try to stay a little below it. But [Bailes] is a little older [sic], and I think he just got confused."

After his deposition, North reviewed a videotape of the lots produced by Sorrow, and he submitted additional testimony through an affidavit. According to the affidavit: "[T]he left edge of [lot 5A] was a creek and the lot ended at the next transformer up to the right. . . . I told [Bailes] to brush from the creek (or near it) to the transformer up to the right." North concluded that Bailes "started and brushed on the other side of the transformer from where I told him to start."

In Sorrow's view, North's admission that he "didn't know exactly where the line was" precludes summary judgment. North also testified, however, that he knew approximately where the line was, and he later explained by affidavit that the landmarks he used to define the property boundaries for Bailes were a creek on one side and a transformer on the other side. Sorrow has pointed to no evidence that these instructions were erroneous or that North's use of these landmarks to identify lot 5A's property lines led to the trespass. For example, she has not presented any evidence that North inaccurately designated the creek and transformer as boundary markers. Furthermore, although North testified at his deposition that he did not remember the property line between lots 5A and 6A "being marked at all," even Sorrow testified that the boundary was identified by stakes and surveyor ties.

Sorrow urges us to disregard all of the testimony in North's affidavit as self-serving and contradictory.[6] But North's affidavit testimony that he instructed Bailes to brush the property between the creek and the transformer does not contradict his prior deposition testimony, in which he stated that he informed Bailes where to brush.[7] Although North testified at his deposition that the boundaries were difficult to discern, he asserted that he knew approximately where they were located. Furthermore, Hadaway testified that he physically showed North lot 5A and also pointed out its position on the land plat.

---

[6] See *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28-30 (1)-(2) (343 SE2d 680) (1986).

[7] See id. at 30 (testimony "is contradictory if one part of the testimony asserts or expresses the opposite of another part of the testimony").

Sorrow has pointed to no evidence that North or Hadaway failed to identify or misidentified the boundaries of lot 5A to Bailes. Thus, she has not shown that any conduct by Hadaway or North led Bailes to damage her property.[8]

(b) Sorrow further argues that Hadaway and North are subject to liability under OCGA § 51-2-5 (1), which provides that "[a]n employer is liable for the negligence of a contractor . . . [w]hen the work is wrongful in itself or, if done in the ordinary manner, would result in a nuisance." She contends that Bailes' activities were "wrongful" because he had no right to enter her land. But Hadaway did not employ North — and North did not employ Bailes — to perform work that was "wrongful in itself." They both hired a contractor to brush Hadaway's property. Accordingly, Sorrow's reliance on OCGA § 51-2-5 (1) is misplaced.[9]

2. Sorrow argues that the trial court erred in granting Hadaway summary judgment on her claim that Hadaway committed trespass by placing a construction silt fence on her property. Hadaway testi-fied, however, that the fence was located in a public right-of-way, next to a road. And Sorrow admitted that she has never determined whether the fence was placed on her property or on the public right-of-way. In short, she has presented no evidence that the silt fence was located *on her property*. Given the lack of evidence, the trial court properly granted Hadaway summary judgment on this trespass claim.[10]

3. Sorrow also argues that the trial court erred in granting Hadaway and North summary judgment on her punitive damages

---

[8] Cf. *Jones v. Ceniza*, 257 Ga. App. 806, 809 (2) (572 SE2d 362) (2002) (jury authorized to find employer liable for independent contractors' trespass onto property neighboring the employer's land where evidence showed that employer pointed out an incorrect property line to the contractors and failed to stop the trespass after learning that the contractors were on the neighbor's land); *Tingle v. Jones*, 249 Ga. App. 654, 656 (549 SE2d 477) (2001) (jury authorized to find employer liable for independent contractors' trespass on neighboring property based on evidence that employer disregarded property line, resulting in the trespass); *Klingshirn v. McNeal*, 239 Ga. App. 112-113 (1) (520 SE2d 761) (1999) (employer liable for damages caused by independent contractor when, pursuant to the employer's instructions, contractor cut trees on property not belonging to employer).

[9] See *Azar v. Gen. Motors Acceptance Corp.*, 134 Ga. App. 176, 178 (3) (213 SE2d 500) (1975) (under the "job which is itself wrongful" exception, if "A employs B as an independent contractor to build a house and a by-stander is injured because of the negligence of B . . . A is fully insulated against B's negligent conduct because A retains no control over the way and manner in which this lawful work is performed by the independent contractor. But if A employs B as an independent contractor to demolish a house which is owned by C, and which A has no right to have demolished, then A is liable because the work is itself wrongful.").

[10] See OCGA § 1-3-3 (20) (" 'Trespass' means any misfeasance, transgression, or offense which damages another's health, reputation, or property."); *Pope v. Pulte Home Corp.*, 246 Ga. App. 120 (1) (539 SE2d 842) (2000) ("Every act which unlawfully interferes with a private property owner's absolute right to enjoy *its property* is a tort for which an action shall lie.") (emphasis supplied).

claim. But as noted above, both defendants were entitled to summary judgment on Sorrow's underlying liability claims. Accordingly, the trial court did not err in granting summary judgment as to punitive damages.[11]

4. In light of our decision in Division 3, Sorrow's remaining enumeration of error is moot.

*Judgment affirmed. Eldridge and Adams, JJ., concur.*

DECIDED JUNE 30, 2004 —
RECONSIDERATION DENIED SEPTEMBER 3, 2004.

*Christopher J. McFadden*, for appellant.
*Lancaster & McKillip, Douglas C. McKillip, Timmons, Warnes & Anderson, James C. Warnes II*, for appellees.

---

[11] See *Albee v. Kransnoff*, 255 Ga. App. 738, 744 (7) (566 SE2d 455) (2002).