A06A0599. PERRY v. GEORGIA POWER COMPANY et al.
(629 SE2d 588)

BLACKBURN, Presiding Judge.

In this personal injury action against Georgia Power Company (GPC) and E-Z Ditching Service (E-Z Ditching), H. Vanzel Perry appeals the trial court's grant of summary judgment to GPC, contending: (1) that the trial court erred in ruling that GPC is not vicariously liable to Perry for the allegedly negligent acts of its independent contractor E-Z Ditching, and (2) that the trial court erred in ruling that GPC is not liable for Perry's injuries because of its failure to flag the power line trench in violation of the Georgia Utility Facility Protection Act (GUFPA), as GPC's conduct was not the cause thereof. We disagree and affirm the trial court's rulings.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[1] So viewed, the evidence shows that Perry visited a construction site at Larry's Giant Subs in Hazlehurst to install an underground telephone cable for BellSouth

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

Utilities. Pursuant to its independent contract with GPC, E-Z Ditching had recently dug a trench and installed and buried a power line in the area where Perry was injured. While no flags had been installed to mark the subject power line trench pursuant to Bell-South's statutory request, Perry was aware of this fact but elected to proceed with his task. He was, in fact, aware of the location of the power line prior to his injury. Perry walked across a level area of the site, and the ground partially collapsed beneath him, causing him to fall and injure himself. Perry never came into contact with the buried power line, nor did he suffer any electric shock.

As a result of his injuries, Perry underwent surgery on his back and was terminated from his job for his inability to perform tasks required by his work. Perry alleged E-Z Ditching was the employee of GPC in his suit against both parties, and that GPC was thus liable for Perry's damages. Perry alleged that GPC was also liable for Perry's injuries based on its failure to flag the power line trench in violation of GUFPA, OCGA § 25-9-1 et seq. The trial court ruled for GPC on both issues, and granted its motion for summary judgment, which Perry now appeals.

1. We first address Perry's contention that GPC is liable here for the negligent actions of its employee, E-Z Ditching, in that GPC is vicariously liable for the actions of its employees. Because E-Z Ditching was an independent contractor of GPC, we disagree.

"An employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer. OCGA § 51-2-4." (Punctuation omitted.) *Cooper v. Olivent.*[2] Such was the case as between E-Z Ditching and GPC: E-Z Ditching performed the work pursuant to a contract naming it as an independent contractor (where contract denominates one party as an independent contractor, that relationship is presumed to be true). See *Loudermilk Enterprises v. Hurtig.*[3] E-Z Ditching performs work for companies other than GPC, owns and maintains its own equipment, manages its own payroll and tax withholding, trains its own employees, and controls the execution of the work. Therefore, under these circumstances, GPC would not as a general matter be vicariously liable for the negligence of its independent contractor, E-Z Ditching, in burying the power line. See *Bell South Telecommunications v. Widner.*[4]

[2] *Cooper v. Olivent*, 271 Ga. App. 563, 564 (1) (610 SE2d 106) (2005).

[3] *Loudermilk Enterprises v. Hurtig*, 214 Ga. App.746 (449 SE2d 141) (1994).

[4] *Bell South Telecommunications v. Widner*, 229 Ga. App. 634 (495 SE2d 52) (1997).

Perry acknowledges the independent contractor status of E-Z Ditching as provided by its contract with GPC, but argues that GPC retained a sufficient amount of control over the time, method, and manner of executing the work as to make GPC vicariously liable pursuant to OCGA § 51-2-5 (5) (exception to general rule of nonliability where one retains an independent contractor). We therefore address the issue of whether GPC retained the right to control or direct the time and manner of E-Z Ditching's work as argued by Perry.

Here, E-Z Ditching performed the work at issue pursuant to a blanket contract with GPC. The contract designated E-Z Ditching as an independent contractor to dig trenches for GPC as assigned by GPC and accepted by E-Z Ditching. Upon acceptance of a work assignment, E-Z Ditching would decide how to do the work and direct its own employees. The contract specified that E-Z Ditching had to comply with GPC's specifications and that GPC retained the right to "inspect the work being done and require performance to comply with specifications, not for the purpose of controlling the method and manner of the performance of the work, but in order to assure the completion of same in accordance with the plans and specifications." GPC did not provide on-site supervision of the work of E-Z Ditching, nor were any GPC employees on site when E-Z Ditching dug the trench that collapsed under Perry. E-Z Ditching owns and maintains its own trenching equipment, and E-Z Ditching determines the hours its employees will work.

Under these circumstances, the trial court did not err in concluding that GPC did not control the time and manner of E-Z Ditching's performance or interfere with E-Z Ditching's work to the extent that GPC became vicariously liable for E-Z Ditching's acts. GPC's right to inspect the work does not render it liable for E-Z Ditching's alleged negligence, because "[i]t is well recognized that merely taking steps to see that the contractor carries out his agreement, by supervision of the intermediate results obtained, or reserving the right of dismissal on grounds of incompetence, is not such interference and assumption of control as will render the employer liable." (Punctuation omitted.) *Slater v. Canal Wood Corp.*[5] Therefore, under the facts before us, GPC did not retain "the right to direct or control the time and manner of executing the work or interfere[ ] and assume[ ] control so as to create the relation of master and servant or so that an injury results which is traceable to [GPC's] interference."[6] We cannot say that the trial court erred in its ruling on this issue.

---

[5] *Slater v. Canal Wood Corp.*, 178 Ga. App. 877, 881 (1) (345 SE2d 71) (1986).
[6] OCGA § 51-2-5 (5).

2. We next address Perry's contention that the trial court erred in rejecting his claim that GPC was directly liable under GUFPA, based on its failure to designate the buried power cable by flag marking or otherwise. In order to resolve this issue and to determine whether or not this act has any application to the present facts, we look first to the purpose of GUFPA, as provided in OCGA § 25-9-2.

The clear purpose of GUFPA, as is relevant to the present case, is to prevent damages to facilities resulting from *excavating and blasting* operations conducted by others in the vicinity of such facilities while carrying out their own construction or utility operations. The act addresses only damages that result from excavating and blasting operations which cause injuries to persons or property resulting from damage to the facilities, in this case, the power line. GUFPA seeks to prevent injury to persons and property and the interruptions of utility service, by establishing a procedure for flagging the facility (power line) upon notice by the outside contractor (BellSouth). By its express language, it is only those injuries that result from *excavating and blasting* to which GUFPA applies, and it does not apply to other causes of injuries. Perry was not injured as a result of excavating and blasting, but was injured when he traversed the trench which had been refilled by E-Z Ditching, the independent contractor of GPC.

To support his contention, Perry must show that his injury was caused by a breach of a duty owed to him by GPC under GUFPA. *John Crane, Inc. v. Jones.*[7] While it is undisputed that the trench was not flagged at the time of Perry's injury, and that proper notice of BellSouth's activity had been given, such failure to mark the trench was not the cause of Perry's injuries.

In order to minimize injuries from the designated operations and allow the notifying excavator to proceed without liability in the event the utility owner fails to flag the facility, GUFPA requires any person who wishes to excavate with mechanized equipment, or to blast in the vicinity of utility facilities, to submit a utility locate request to the utilities protection center at least 48 hours prior to the planned excavation.[8] The utilities protection center coordinates providing the notice to the appropriate utilities.[9] Upon receiving the notice, utility owners or operators are required to locate and timely mark the buried utilities on the subject tract.[10] If a utility owner or operator ultimately

---

[7] *John Crane, Inc. v. Jones*, 278 Ga. 747, 751 (604 SE2d 822) (2004).

[8] OCGA § 25-9-6 (a).

[9] OCGA § 25-9-3 (34).

[10] OCGA § 25-9-7 (a).

fails to respond to the locate request, the excavator may proceed with the excavation without liability resulting from any damage to the buried utility.[11]

Here, it is undisputed that the proper utility locate request was given and that the trench was not marked when Perry was injured. However,

> [t]he purpose of [GUFPA] is to protect the public from physical harm, prevent injury to persons and property, and prevent interruptions of utility service *resulting from damage to utility facilities* and sewer laterals *caused by blasting or excavating operations* by providing a method whereby the location of utility facilities and sewer laterals will be made known to persons planning to engage in blasting or excavating operations so that such persons may observe proper precautions *with respect to such utility facilities and sewer laterals.*[12]

(Emphasis supplied.) Perry contends that if GPC had properly marked the buried power line, he would have been more careful about where he walked; but Perry also stated that he was aware of the general location where the utility trench had been dug, which was indeed where he was injured.

Moreover, as there was no evidence of any patent defects in the trenched area, Perry's complaint is of a hidden flaw in the trenched ground. Surface markings showing the path of the trench would not have informed Perry of the danger of which he complained, i.e., a subsurface defect in the trench. Perry's injuries were not caused by the failure of GPC to flag the trench, as he was aware of the location of the trench at the time of his injury, and the existence of the flags would not have made him aware of the latent defect resulting from the defective burial of the power line by E-Z Ditching. Here, the injury arose from a fall into a defectively filled and packed utility trench by GPC's independent contractor, not from contact with a hidden utility line during excavation or blasting operations. Perry's injuries were not caused by any violation of GUFPA by GPC, and it has no application to the facts herein involved.

Perry analogizes this case to ones involving the High-voltage Safety Act (HVSA), OCGA § 46-3-30 et seq., which has no application here. In contrast to GUFPA, the HVSA requires utility owners or operators to de-energize or otherwise make safe certain high-voltage

---

[11] OCGA § 25-9-7 (e).
[12] OCGA § 25-9-2.

overhead wires when notified that work will take place within ten feet of the overhead wires.[13]

> The purpose of [the HVSA] is to prevent injury to persons and property and interruptions of utility service *resulting from accidental or inadvertent contact with high-voltage electric lines* by providing that no work shall be done in the vicinity of such lines unless and until the owner or operator thereof has been notified of such work and has taken one of the safety measures prescribed in this part.

(Emphasis supplied.) OCGA § 46-3-31. The HVSA relieves owners and operators from liability for "damage or loss to person or property resulting from work within ten feet of high-voltage lines *unless notice has been given* as required . . . *and the owner or operator* of the high-voltage line *has failed to comply* with" the HVSA.[14] (Emphasis supplied.)

Notwithstanding the fact that the HVSA, which deals with overhead lines, has no application in this case, Perry argues that the HVSA language implies a duty to comply with the HVSA, and that we should by analogy recognize a similar duty to comply with the GUFPA. However, in each of the HVSA cases cited by Perry, the injuries resulted from contact with the utility line. Here, it is undisputed that Perry did not make contact with the buried power line; therefore, his injury did not arise from a breach of GPC's duty to Perry under GUFPA. The stated purpose of the GUFPA is, in relevant part, "to protect the public from physical harm, prevent injury to persons and property, and prevent interruptions of utility service *resulting from damage to utility facilities* and sewer laterals *caused by blasting or excavating operations*." (Emphasis supplied.) OCGA § 25-9-2. Thus, any duty owed by GPC to Perry under GUFPA was to help avoid injury due to damage to buried utilities during excavation or blasting. As Perry was injured while walking across level ground before he began excavating, GUFPA simply does not create a cause of action that reaches this factual scenario. Therefore, the trial court did not err in its ruling on this issue or in granting summary judgment to GPC.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

---

[13] OCGA § 46-3-33.
[14] OCGA § 46-3-39 (a).

DECIDED APRIL 12, 2006 — 

*Smart & Harris, Don Smart*, for appellant.
*McNatt & Greene, Hugh B. McNatt, Troy L. Greene, John T. Croley, Jr.*, for appellees.