A06A0734. COTTON STATES MUTUAL INSURANCE COMPANY v. KINZALOW et al.

(634 SE2d 172)

BERNES, Judge.

Appellees Jennifer Kinzalow and Mary Ann Lamay sued their former employer, Cotton States Mutual Insurance Company, and their former supervisor, Michael Sweet, asserting various claims against Sweet stemming from allegations that he recorded activity within their office without their knowledge or consent. They also seek to hold Cotton States directly and indirectly liable for Sweet's conduct. Cotton States appeals the trial court's denial of its motion for summary judgment on all substantive claims.[1] For the reasons set forth below, we reverse.

> The standard of review of the denial of a defendant's motion for summary judgment is a de novo review of the evidence of record with all reasonable inferences therefrom viewed in the light most favorable to the nonmoving party. The purpose of the review is to determine whether there remains a question for jury determination as to at least one material fact upon which plaintiff's case rests. . . . If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial.

(Citations, punctuation and emphasis omitted.) *Hillcrest Foods v. Kiritsy*, 227 Ga. App. 554, 554-555 (489 SE2d 547) (1997).

So viewed, the record reveals that Cotton States is a regional insurer that provides insurance throughout the Southeast. Sweet was under a contractual relationship with Cotton States to sell insurance. During the times relevant to this action, Sweet shared an

---

[1] Cotton States also asserted as error the trial court's failure to hold a hearing on its motion for summary judgment prior to denying it, which counsel withdrew at oral argument.

office with his partner Terry Kinney, and both employed appellees Kinzalow and Lamay. Sweet's and Kinney's office was a free standing building, in which both had individual offices. It is undisputed that Kinzalow and Lamay were at-will employees.

During the summer of 2002, Sweet became concerned that people were going into the desk in his individual office without authorization. At some point, he placed an audiotape recorder in his individual office and set it to record in his absence. While the tape recorder did not produce a viable recording, it is undisputed that Lamay saw the recorder and that both Kinzalow and Lamay knew of Sweet's attempt to record but never complained to Sweet or Cotton States.

It is also undisputed that on October 14, 2002, Sweet placed a video camcorder on the floor of his individual office before leaving for a meeting and, while he was gone, Kinzalow and Lamay went into his office and attempted to open his desk drawers. Kinzalow and Lamay assert that Sweet returned from his meeting and went directly into the restroom for no more than two or three seconds, then proceeded into his office for no more than three minutes, at which time he confronted them with his knowledge that they had been discussing him while he was not there and allegedly made specific references to their conversation. From this, Kinzalow and Lamay conclude that Sweet was not in his office long enough to decipher anything from the videotape; deduce that the video recorded in Sweet's office was not the only recording device in the office; and assert that there was a recording device placed in the unisex bathroom.

A heated verbal confrontation resulted between Sweet, Kinzalow, and Lamay, and Sweet terminated Kinzalow's employment. He also initially terminated Lamay, but ultimately told her that she could stay if she so desired. Lamay was again terminated on November 22, 2002. According to Lamay, she was terminated after her husband wrote a letter to Cotton States regarding the above-cited incident.

Kinzalow and Lamay then filed the instant lawsuit against Sweet and Cotton States, generally contending that Sweet improperly recorded them in the workplace, acted in an "outrageous" manner during the confrontation described above, and improperly terminated Lamay's employment. They assert claims against Sweet for intrusion upon seclusion, intentional infliction of emotional distress, and retaliation. They also assert claims against Cotton States for retaliation and negligent retention. They further move for damages against both Sweet and Cotton States for "extreme mental and emotional trauma," punitive damages, and attorney fees. Finally, they seek to hold Cotton States vicariously liable for their claims against Sweet under the doctrines of respondeat superior and joint and several liability.

At the close of discovery, Cotton States moved for summary judgment on all of the appellees' substantive claims and both parties requested a hearing.[2] Sweet did not join in the motion or otherwise move for summary judgment on the claims against him. The trial court denied Cotton States' motion without a hearing, holding that there exists a material issue of fact as to whether Sweet was an independent contractor or an employee of Cotton States. The trial court's order did not address Cotton States' motion as to the remaining substantive claims.

As an initial matter, we note that the trial court erred when it failed to consider whether Cotton States was entitled to summary judgment with respect to any of the underlying substantive claims upon which it moved. The trial court correctly noted that litigants are entitled to a trial by jury where there are issues of fact that cannot be resolved by the court as a matter of law. OCGA § 9-11-56 (c). But "[s]o long as one essential element under any theory of recovery is lacking[,] the defendant is entitled to summary judgment as a matter of law irrespective of any issues of fact with regard to other essential elements." (Citation and punctuation omitted.) *Mableton Parkway CVS v. Salter*, 273 Ga. App. 477, 481 (2) (a) (615 SE2d 558) (2005). Upon Cotton States' motion, the trial court was required to consider whether Cotton States' could establish as a matter of law that the appellees could not prove at least one essential element of any cause of action asserted against it — either directly or indirectly — and, if so, to grant it summary judgment.[3] OCGA § 9-11-56 (c).

We further hold that the trial court erred when it held that there exists a question of fact as to whether Sweet was an independent contractor or employee of Cotton States.

> The employer generally is not responsible for torts committed by his employee when the latter exercises an independent business, and in it is not subject to the immediate direction and control of the employer. In determining whether the relationship of parties under a contract for performance of labor is that of employer and servant or that of employer

---

[2] After Cotton States moved for summary judgment on the original complaint, appellees filed an amended complaint, which omitted the claim for sexual harassment against Sweet, but otherwise alleges the same causes of action.

[3] In order to succeed in a claim of respondeat superior against an employer, one must first prove the existence of an underlying tort, and then establish that the employee was acting in furtherance of the employer's business and that he was acting within the scope of the employer's business when the tort was committed. *Piedmont Hosp. v. Palladino*, 276 Ga. 612, 613 (580 SE2d 215) (2003). Because a plaintiff must first establish the existence of an underlying tort, appellees' assertions that Cotton States lacked standing to move for summary judgment on the substantive claims in the complaint lacks merit.

and independent contractor, the chief test lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work as distinguished from the right merely to require certain definite results in conformity to the contract. Where the contract of employment clearly denominates the other party as an independent contractor, that relationship is presumed to be true unless the evidence shows that the employer assumed such control. On the other hand, where the contract specifies that the employee's status shall be that of independent contractor but at the same time provides that he shall be subject to any rules or policies of the employer which may be adopted in the future, no such presumption arises.

(Citations and punctuation omitted.) *Ross v. Ninety-Two West*, 201 Ga. App. 887, 891-892 (3) (412 SE2d 876) (1991).

The Agent's Contract entered into between Sweet and Cotton States during the relevant time period expressly provided that Sweet was "not an employee of [Cotton States] for any purpose," but was rather "an independent contractor for all purposes, having the right to exercise independent judgment as to the time, place and manner of soliciting policies, servicing Policyholders, and otherwise carrying out the provisions of th[e] Contract and [was] not subject to the control of [Cotton States] except as set forth herein."[4] Also set forth in the contract: Sweet set his own work schedule; Sweet was required to exercise supervision and control over any and all of his employees; Sweet was responsible for making all of the necessary federal, state, and local tax and other filings or returns required by law; Sweet was not restricted as to his sales territory; Sweet was to be compensated solely by commissions determined by Cotton States; Sweet was responsible for procuring and maintaining liability insurance sufficient to protect himself and/or assume responsibility for his employees; Sweet was required to pay all license fees required for his business; and Sweet was authorized to sell insurance products for other pre-approved companies. The contract further denied Sweet the authority to contractually bind or incur any debt in the name of Cotton States.

---

[4] While the contract reserved the right to alter the "rules, regulations, prices, and terms under which it will Insure risks" in conformity with "changing laws, regulations and conditions," it did so only to the extent that it did not alter the relationship of that of employer and independent contractor. Accordingly, Cotton States did not lose the presumption afforded to it under the terms of the contract. Compare *American Family Life Assurance Co. v. Welch*, 120 Ga. App. 334, 339 (2) (170 SE2d 703) (1969).

The record further shows that Sweet and Kinney maintained separate agencies even though they shared a common workplace. The property lease and utilities were all in Sweet's name exclusively and were paid solely by Sweet and Kinney. Sweet and Kinney hired and fired their employees, including Kinzalow and Lamay, without any input or participation by Cotton States and were solely responsible for their salaries. All new insurance agents, including Sweet, were required to attend an initial training to learn Cotton States' procedures and methods with respect to marketing and writing their insurance policies, but the agents were not required to attend any other continuing training or educational programs offered by Cotton States. Sweet was authorized to sell insurance for numerous different providers unrelated to Cotton States. In so doing, Sweet would contract directly with the non-Cotton States company and, while the company was pre-approved by Cotton States, Cotton States had no control over or involvement in the relationship absent receiving a report from the company on Sweet's production.

Despite the express terms of the contract and the above-cited evidence of the business relationship, the appellees contend that Cotton States exercised sufficient control over its agents, namely Sweet, to create a jury question as to the nature of the relationship. The contract does contain certain restrictions, terms, and conditions under which Sweet and Cotton States are to operate. Cotton States keeps itself informed of its agents' sales figures and expects certain production results. It also requires that agents keep accurate records and accounts on their agencies and reserves the right to inspect the same. Cotton States is entitled to take steps to ensure compliance with its contract and to monitor the results obtained thereunder. Such activity evidences Cotton States' right to require certain results under its agency contract, as opposed to its controlling of the time, method and manner by which the results are achieved. See *Perry v. Ga. Power Co.*, 278 Ga. App. 759, 760 (1) (629 SE2d 588) (2006). See also *Lockett v. Allstate Ins. Co.*, 364 FSupp.2d 1368, 1376-1377 (III) (B) (2) (M.D. Ga. 2005).

Cotton States also makes available for its agents' use certain forms, signs, and manuals and provides the computer hardware and software that allows its agents to electronically manage their agencies. Contrary to appellees' assertion, Cotton States' willingness to supply these materials to its agents does not intrude into the agents' ability to control the daily operations of his business. See *Bartlett v. Northside Realty Assoc.*, 191 Ga. App. 10, 12 (380 SE2d 744) (1989). See also *Lockett*, 364 FSupp.2d at 1377 (III) (B) (2).

Finally, the contract provides that Cotton States must approve of any advertisements which promote the company or its products and/or must approve any advertisement or promotional material

utilizing its name, trademark or logo. The exercise of Cotton States' right to protect and control its trade name and good will does not equate to managing the daily operations of Sweet's business. See *American Family Life Assurance Co. v. Welch*, 120 Ga. App. 334, 336, 338 (1) (170 SE2d 703) (1969). See also *Lockett*, 364 FSupp.2d at 1378 (III) (B) (2) ("[A]dvertising restrictions do not make Plaintiff an employee [as opposed to an independent contractor].") (citation omitted); *Schlotzsky's, Inc. v. Hyde*, 245 Ga. App. 888, 890 (538 SE2d 561) (2000) (recognizing that a franchisor can set forth specific and detailed standards in order to protect its trade name without being deemed to retain day-to-day supervisory control of its franchisee's business operations).

> There are a plethora of additional circumstances cited by [appellees] too numerous to further burden an already lengthy opinion. Suffice it to say that we have painstakingly reviewed each and every circumstance cited. The overwhelming number of these circumstances is simply not inconsistent with the employer/independent contractor relationship when viewed in light of the record as a whole. Those few circumstances which on the surface appear to be inconsistent with the employer/independent contractor relationship are either neutralized by [Cotton States'] uncontradicted explanations which adequately explain the perceived inconsistency, or are so inconsequential when viewed in light of the evidence to the contrary as to establish no genuine issue of fact.

(Citations and punctuation omitted.) *Bartlett*, 191 Ga. App. at 12-13.

Simply put, the record does not establish the right or assumption by Cotton States to control the time, manner, and method of the performance of Sweet under the Agency Contract. See *Perry*, 278 Ga. App. at 760-761; *Fortune v. Principal Financial Group*, 219 Ga. App. 367, 368-370 (465 SE2d 698) (1995); *Ross*, 201 Ga. App. at 891-892 (3); *Welch*, 120 Ga. App. at 335-339 (1). See also *Lockett*, 364 FSupp.2d at 1376-1379 (III) (B) (2). Compare *Ledbetter v. Delight Wholesale Co.*, 191 Ga. App. 64, 65-68 (1) (380 SE2d 736) (1989).

Accordingly, Cotton States was entitled to summary judgment on the issue of Sweet's employment status, so we reverse the trial court on this issue. However, it is unclear from the record whether any of appellees' substantive claims against Cotton States can survive absent vicarious liability. We therefore remand the case to the trial court for further consideration of Cotton States' motion for summary judgment to the extent that claims asserted against it survive after the issuance of this opinion.

*Judgment reversed and case remanded. Andrews, P. J., and Barnes, J., concur.*

DECIDED JULY 11, 2006.

*Berman Fink Van Horn, Benjamin I. Fink, Aaron B. Chausmer*, for appellant.

*Thompson, O'Brien, Kemp & Nasuti, John P. O'Brien, Lisa A. Frank*, for appellees.