**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 25, 2013**

# In the Court of Appeals of Georgia

A12A2198. WILANN PROPERTIES I, LLC v. GEORGIA POWER
        COMPANY.

McMillian, Judge.

Georgia Power Company ("Georgia Power") operates an electrical transmission line over the property of Wilann Properties I, LLC ("Wilann") in Floyd County. Georgia Power filed this action seeking a declaration that it had the right to construct, operate, and maintain new poles and new electrical lines within its two easements across Wilann's property and seeking to enjoin Wilann from interfering with its construction and maintenance activities. Wilann, who contended that the easements were too vague to make a determination of their boundaries, counterclaimed for a declaration that Georgia Power had no right to expand its electric lines and asserted claims for inverse condemnation, trespass, and injunctive relief. After the superior

court granted interlocutory relief to Georgia Power and Wilann's associated appeal was dismissed by this Court, Georgia Power moved for summary judgment on its claims and on Wilann's counterclaim. The trial court granted summary judgment to Georgia Power, and Wilann appeals. Wilann claims that the trial court erred in finding that (i) the easements' boundaries were clearly established, (ii) the change in use of the easements was a change in degree of use and did not amount to an inverse condemnation, (iii) Georgia Power had not abandoned the easements' 100-foot right-of-way, and (iv) a construction company employed by Georgia Power was an independent contractor for whose actions Georgia Power could not be held liable. For the reasons set forth below, we find that Wilann's claims of error have no merit. Accordingly, we affirm.

"Summary judgment is appropriate if the pleadings and the undisputed evidence show that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c)." *Bank of North Ga. v. Windermere Dev., Inc.*, 316 Ga. App. 33, 34 (728 SE2d 714) (2012). "On appeal from the grant or denial of summary judgment, the appellate courts conduct a de novo review, construing all reasonable inferences in the light most favorable to the nonmoving party." (Citation omitted.) Id.

2

So viewed, the evidence shows that in 1926, for consideration of $74 and $249, respectively, Wilann's predecessor granted Georgia Power's predecessor two express easements (the "Easements") establishing a 100 foot right-of-way across Wilann's property. The Easements provide Georgia Power with the right to go on the lands and "at any time now or hereafter, construct, operate and maintain perpetually upon said right-of-way, . . . lines for transmitting electric current with towers, frames, poles, wires and other necessary apparatus and appliances . . . ." As further provided therein, Georgia Power may "at any and all times . . . enter upon said premises for the purpose of inspecting said lines and making repairs, renewals and alterations thereon." In addition, among other things, Georgia Power has "the right to cut away and keep clear of said transmission line or lines all trees and other like obstructions that may now or hereafter interfere or be likely to interfere" with the lines' proper operation.

Also during 1926, Georgia Power's predecessor constructed an electric transmission line consisting of wooden poles with a copper conductor across the right-of-way as part of what was designated the Lindale-Cave Spring Line (the "Line"). The conductor lost its efficiency over time, and in 2009 Georgia Power decided to upgrade the Line. The project consisted of replacing the old conductor with more effective materials and replacing the wooden poles with steel-reinforced concrete poles.

3

According to Georgia Power's manager, the new poles would be, on average, 20 feet higher than the existing poles.

In conjunction with the planned construction, Georgia Power contracted with Caffrey Construction Company to trim and clear trees and vegetation along the Line within Georgia Power's right-of-way. The boundaries of Georgia Power's easements along the Line were marked before Caffrey began its clearing activities. Georgia Power's contract with Caffrey provided that Caffrey was to act as an independent contractor, and a Georgia Power supervisor averred that Georgia Power did not in any way control the time, manner, or method of Caffrey's work.

Caffrey entered Wilann's property on and around October 23, 2009, and cut trees in what is described as a "stream buffer/wetland area." Several large trees were cut down on an earthen embankment dam, and the stumps left to deteriorate. Later that month, Wilann blocked access to the Easements and only allowed access by a third party inspector. From late October 2009 through late March 2010, Georgia Power crews and contractors conducted no land disturbing activities on that portion of Georgia Power's right-of-way located on Wilann's property, and they worked on other areas of the Line.

On March 10, 2010, Georgia Power filed a complaint against Wilann for declaratory judgment and an injunction precluding Wilann from interfering with Georgia Power's survey, assessment, construction, and maintenance activities within the Easements. Wilann filed an answer and a counterclaim for inverse condemnation, for declaratory judgment that the Easements do not include the right to expand the electrical transmission line to a higher voltage, and to enjoin the construction on its property, among other things. Following a hearing solely on the question of injunctive relief, the trial court granted Georgia Power's request for an interlocutory injunction and denied Wilann's request for an injunction.

After the trial court entered its order, a crew began to replace the existing lines and poles within the Easements. Georgia Power completed all construction and re-energized the transmission lines on April 22, 2010. The fourteen existing wooden poles were replaced with thirteen steel-reinforced concrete poles. The replacement poles were placed along the pre-existing centerline within inches, longitudinally, of the poles originally placed within the Easements.

The original plan sheet for the Line describes it as a 38,000 volt (38kV) transmission line. As replaced, the transmission line cannot support a higher voltage transmission than 46kV. Georgia Power's line supervisor averred that a 38kV line "has

5

the same characteristics and the same through capacity as a [46]kV[1] line. 38kV is no longer used as a voltage level by Georgia Power– [46]kV is the modern equivalent." Although Wilann suggests that the replacement poles can support a 115kV line or a 230kV line, the testimony showed that such an upgrade would require even bigger poles.

Shortly after the trial court entered the interlocutory injunction, the Environmental Protection Division ("EPD") of the Georgia Department of Resources inspected the construction activities along the Line. Georgia Power and the EPD subsequently entered into a consent order requiring, among other things, that Georgia Power file a revised notice of intent accurately describing disturbed acreage and pay appropriate land disturbing fees.

Also following the trial court's interlocutory injunction, Wilann filed a notice of appeal to this Court from the trial court's order. Wilann filed another appeal from the trial court's subsequent order denying its request for supersedeas and injunction pending appeal. In view of Georgia Power's completion of the project to upgrade and

---

[1] The affidavit sometimes refers to "46kV" and at other times to "48kV," although the intent, it appears, is to refer to 46kV. According to testimony at the preliminary injunction hearing, the voltage of the new transmission line would be "[t]he same thing, 46 kV."

re-energize the transmission lines, we dismissed the first appeal as moot in Case No. A10A1687. By our order in Case No. A10A2131, we allowed Wilann to withdraw the second appeal.

Following remittitur, Wilann amended its counterclaim to allege, among other things, that Georgia Power had cut trees on a dam located on Wilann's property, leaving the stumps in the ground to deteriorate and thereby causing erosion. Georgia Power moved for summary judgment as to its claims and as to Wilann's counterclaim. Upon finding that Caffrey was an independent contractor, that Georgia Power did not abandon the Easements, that the description and boundaries of the Easements are clearly established, and that Georgia Power's change of its degree of use of the Easements did not amount to an inverse condemnation, the trial court granted summary judgment to Georgia Power. The trial court found that Georgia Power had the right to construct the new transmission line over the Easements and that the new transmission line is within the scope of the rights granted to Georgia Power. The trial court also permanently enjoined Wilann from interfering with Georgia Power's use of the Easements, and it denied all relief sought by Wilann in its counterclaim, including Wilann's claim for an injunction, a declaratory judgment, and monetary awards based upon a taking and trespass. Wilann appeals.

7

1. Wilann claims that the trial court erred in finding that the description and boundaries of the Easements are clearly established. We disagree.

The Easements each provide: "The center line of said right-of-way being shown on plat made by the Georgia Utilities Company, its successors and assigns, and filed or to be filed in the office of the Clerk of the Superior Court of the County in which said lands are situated." Notwithstanding this provision, no plat was attached to the Easements when they were recorded, and a search of the record by a Wilann representative failed to identify any other plat that described the center line of the Easements. Georgia Power's position is that the Easements' center line corresponds to the placement of the original poles. Wilann contends that Georgia Power's interests remain vague and undefined such that it had no legal right to install new poles and electrical lines on its property. The trial court held that because Georgia Power's power lines have been erected and used over several decades, the center line is defined thereby and no issue of material fact remains.

Wilann points out that a power company in providing a notice to condemn an easement for a right-of-way for purposes of erecting an electrical transmission line, "shall describe the property with the same definiteness as is required in a deed of conveyance of land." (Citations and punctuation omitted.) *Gunn v. Ga. Power Co.*, 205

Ga. 85, 86 (52 SE2d 449) (1949). See OCGA § 22-3-20 ("[a]ny person operating . . . a plant for generating electricity shall have the right to . . . condemn rights of way or other easements over the lands of others in order to run power lines . . . ."). But we are unpersuaded that this principle has any application here.[2] Rather, "where the parties have established the actual location and dimensions of an easement, that determination is the controlling factor under Georgia law." *Sloan v. Sarah Rhodes*, *LLC*, 274 Ga. 879, 880 (560 SE2d 653) (2002). And although the precise location of the Easements' right-of-way was indefinite, it "became definite by the actual placement of the poles," followed by the passage of a considerable period of time, more than 80 years in this case, from the completion of the original work. *Bibb County v. Ga. Power Co.*, 241 Ga. App. 131, 133 (2) (525 SE2d 136) (1999) (citations omitted). See *Jackson Electric Membership Corp. v. Echols*, 84 Ga. App. 610, 611 (66 SE2d 770) (1951) ("While the easement relied upon by the plaintiff did not specifically designate the location or the extent of the line or system of lines to be erected on and over the defendants' lands, the subsequent erection of a line and the termination of the work thereon for a considerable

---

[2] Pretermitting whether, if otherwise, it would have any impact on our analysis, there is no evidence that the Easements were acquired in a condemnation proceeding.

9

period of time operated to fix and determine this feature of the contract"). Accordingly, we find no merit to this claim of error.

2. Wilann claims that the trial court erred in finding that the use of the Easements is a change in the degree of use and does not amount to inverse condemnation. We disagree.

"The normal rules of contract construction govern review of the meaning of an express easement, which generally presents a question of law for the court." *Kammerer Real Estate Holdings, LLC v. PLH Sandy Springs, LLC*, __ Ga. App. __ (1) (734 SE2d 249) (2012). And if the terms are clear and unambiguous, the court looks to the contract alone to determine the parties' intent. *Parris Props., LLC v. Nichols*, 305 Ga. App. 734, 738 (1) (a) (700 SE2d 848) (2010). By the terms of the Easements, Georgia Power is allowed to construct "one or more lines for transmitting electric current with towers, frames, poles, wires and other necessary apparatus," whether "now or hereafter," without any express limitation; provided, however, that Georgia Power's predecessor was required to compensate the grantor if it erected more than 13 poles as to one easement, and more than 27 poles as to the other. Compare, e. g., *Donalson v. Ga. Power & Light Co.*, 175 Ga. 462, 462-463 (165 SE 440) (1932) (dedication by

10

property owner of land to City for use as a street did not allow power company to erect thereon poles and wires to transmit electricity).

Wilann contends that the type of lines and voltage contemplated by the parties was nevertheless limited by the plan sheets for the Line. He also points out that this Court has found that where an easement for construction of an electric power transmission line did not specify the location or extent of the line, the grant became fixed once constructed and could not be extended absent a new grant of easement by the property owner or proper condemnation. *Jackson Electric Membership Corp.*, 84 Ga. App. at 612. In either case, Wilann's position is that the transmission lines, as originally erected, "exhaust the limits of the" Easements, which do not contemplate an upgrade of the lines by Georgia Power to transmit power in excess of 38kV, or the upgrade of lines, towers, frames, and poles to that of modern construction, and so the construction undertaken by Georgia Power was a taking for which Wilann is entitled to compensation. See generally *Solid Equities, Inc. v. City of Atlanta*, 308 Ga. App. 895, 897 (2) (710 SE2d 165) (2011) ("[a]n inverse condemnation claim arises when the [condemning authority] creates a condition on private property that amounts to a taking without compensation") (citation and punctuation omitted).

11

Wilann's reliance on *Jackson* is misplaced inasmuch as we concluded therein that the electric company could not enter upon the defendant's land and take "additional portions thereof" for erection of a line extension without compensation. *Jackson Electric Membership Corp.*, 84 Ga. App. at 612. Thus, *Jackson* has been cited for the proposition that "[o]nce the path of the easement became fixed, the path could not be unilaterally relocated or widened by either of the parties." (Citations omitted.) *Parris Props.*, 305 Ga. App. at 739 (1) (b). Here, however, Georgia Power has not attempted to unilaterally change the location of the Easements as established by the initial construction. And to the extent *Jackson* also infers that the "extent of the line" contemplated by the easement was also established by the erection of the actual line, we cannot conclude that Georgia Power was thereby subject to any limitation that would take the Easements outside the operation of the general rules regarding permissible changes in use of an easement. See, e. g., *Kerlin v. Southern Bell Tel. &c. Co.*, 191 Ga. 663, 668-669 (3) (13 SE2d 790) (1941) (where there was a prescriptive easement for pole lines and wires, change in degree of use was a reasonable and normal incident of the right). And as to Wilann's reliance on the plan sheets for the Line, it presents no argument or authority for the proposition that the plan sheets would act as an express limitation as to the terms of the Easements.

12

In light of the foregoing, we find that the general rule applies here. "[A] change in the manner, frequency, and intensity of use of the easement within the physical boundaries of the existing easement is permitted without the consent of the other party, so long as the change is not so substantial as to cause unreasonable damage to the servient estate or unreasonably interfere with its enjoyment." (Citations, punctuation, and emphasis omitted.) *Parris Props.*, 305 Ga. App. at 739 (1) (b) (finding that where owner granted express easement for construction of a sewer, the grantee could unilaterally replace the four inch diameter sewer pipe with a six or eight inch diameter sewer pipe). In the context of transmission lines, we have found that the replacement of poles and lines constitute such a permissible change in use, even if the poles are taller and have wider cross arms, additional wires are added, or equipment added so as to accommodate higher voltage. See *Faulkner v. Ga. Power Co.*, 243 Ga. 649 (256 SE2d 339) (1979) (new high-voltage line not an additional servitude on the underlying fee); *Humphries v. Ga. Power Co.*, 224 Ga. 128, 129 (3) (160 SE2d 351) (1968) (installation of taller poles with wider cross arms and facilities to accommodate higher voltage electric lines was a change in the degree of use rather than in the kind of use); *Kerlin*, 191 Ga. at 668-669 (3) (the installation of additional telephone wires amounted to a permissible change in the degree of use); *Municipal Elec. Auth. of Ga. v. Gold-*

13

*Arrow Farms*, 276 Ga. App. 862, 869 (2) (625 SE2d 57) (2005) (easements for electric communication lines permitted use of fiber optic communication lines as an accommodation for new technology and as such was a change in degree of use). And given the foregoing, Georgia Power's construction, which involved replacing fourteen wooden poles with thirteen taller, steel-reinforced concrete ones, and installing new conducting lines, falls within such a permissible change in degree of use. Further, even if we accepted Wilann's claim that the plan sheet for the Line restricted the transmission lines located on the Easements to 38kV, the undisputed evidence is that a 46kV line and a 38kV line have the same characteristics. Accordingly, Georgia Power did not take anything from Wilann that was not inherent in the original grant, and the trial court did not err in finding that Wilann had no right to compensation arising from Georgia Power's use of the easements.

3. Wilann further claims that the trial court erred in finding that the entire 100-foot right-of-way of the Easements had not been abandoned as a result of nonuse since 1926. Again, we disagree.

Wilann contends that "the original taking area" of a 100 feet in width has been abandoned. Generally, "an express easement may be abandoned when nonuse is accompanied by acts manifesting a clear intent to abandon, and which destroy the

14

object for which the easements were created or the means of their enjoyment." (Citation and punctuation omitted.) *Crystal Farms, Inc. v. Road Atlanta, LLC*, 302 Ga. App. 494, 497 (1) (690 SE2d 666) (2010). Here, given our findings in Division 1, the undisputed evidence is that the Easements were clearly defined and that the transmission line crossing them has been in operation continuously since 1926. Wilann nevertheless suggests that Georgia Power's nonuse and intent to abandon is manifested by evidence that the Easements were maintained by Georgia Power approximately every six years, and that parts thereof had previously been clear cut only to a width of 68 feet. Whether it might be argued that the foregoing is actually more indicative of use than nonuse, the timing and extent of Georgia Power's periodic maintenance is definitely not evidence of nonuse accompanied by "clear, unequivocal and decisive evidence of an intent to abandon the easement." (Citations and punctuation omitted.) *Plantation Pipe Line Co. v. Milford*, 257 Ga. App. 709, 712 (2) (a) (572 SE2d 67) (2002). We find no error.

4. Lastly, we consider Wilann's claim that the trial court erred in finding that Caffrey was an independent contractor and that Georgia Power cannot be held liable for Caffrey's actions. "An employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not

15

subject to the immediate direction and control of the employer." OCGA § 51-2-4. As we have explained, the rationale for the general rule is "because the employer has no right of control over the manner in which the work is to be done, it is to be regarded as the contractor's own enterprise, and he, rather than the employer, is the proper party to be charged with the responsibility for preventing the risk." (Citation and punctuation omitted.) *Ga. Messenger Svc., Inc. v. Bradley*, 311 Ga. App. 148, 149 (1) (715 SE2d 699) (2011).

(a) We agree with the trial court that there remain no issues of genuine fact as to whether Caffrey was an independent contractor. The inquiry as to the "independent business" requirement of OCGA § 51-2-4 turns upon "whether the contractor has a bona fide existence apart from the employer or functions instead as the employer's alter ego." (Citation and punctuation omitted.) *Slater v. Canal Wood Corp.*, 178 Ga. App. 877, 878 (1) (345 SE2d 71) (1986). And the chief test for distinguishing a servant from an independent contractor is "whether the contract gives, or the employer assumes, the right to control the time, manner, and method of the performance of the work, as distinguished from the right merely to require certain definite results in conformity with the contract." (Citation and punctuation omitted.) Id. See OCGA § 51-2-5 (5) (employer liable for contractor's negligence "[i]f the employer retains the right

16

to direct or control the time and manner of executing the work or interferes and assumes control so as to create the relation of master and servant or so that an injury results which is traceable to his interference").

Here, the contract between Caffrey and Georgia Power specifies that Caffrey is an independent contractor. See *Bartlett v. Northside Realty Assoc.*, 191 Ga. App. 10 (380 SE2d 744) (1989) (where the contract denominates the other party as an independent contractor, that relationship is presumed to be true absent evidence that the employer assumed right to control the time, manner, and method of executing the work). Further, Caffrey and Georgia Power did not have an exclusive arrangement, and Caffrey was free to provide services to other entities. And Caffrey was responsible for all means, methods, techniques and procedures associated with trimming trees and vegetation within the right-of-way. Wilann does not show otherwise. Accordingly, the relationship between Caffrey and Georgia Power was not that of employer and servant, but of employer and independent contractor.

(b) Wilann nevertheless contends that, other than the allegation Caffrey left stumps in the ground of the dam which has resulted in unsafe conditions, "all the issues in this case turn on the boundaries of the areas described in the . . . Easements." Thus, Wilann argues, because Georgia Power accepted Caffrey's work and was responsible

17

for marking the lines of its right-of-way, Caffrey was not responsible for clear cutting Wilann's property outside the boundaries of the Easements. We agree with Wilann that if Georgia Power had incorrectly marked the Easements' boundaries and then directed Caffrey to clear cut therein, with the result that Caffrey went outside Georgia Power's right-of-way and trespassed upon Wilann's property, Georgia Power would not be relieved of liability by Caffrey's status as an independent contractor. "[I]f it appears that the contractor has followed the plans and directions of his employer and injury has resulted, the employer, and not the contractor, is to be held liable. For unskillful or negligent execution of the work the contractor (and usually not the employer) is liable." (Citation omitted.) *Lee v. Southern Telecom Co.*, 303 Ga. App. 642, 645 (2) (694 SE2d 125) (2010) (where evidence did not show whether employer directed the location of the cable installed by the contractor, employer could not show for purpose of summary judgment that it had no liability for the alleged trespass of its contractor). See *Sorrow v. Hadaway*, 269 Ga. App. 446, 448 (1) (a) (604 SE2d 197) (2004) ("OCGA §§ 51-2-4 and 51-2-5 limit an employer's vicarious liability only and do not apply to a claim arising from the employer's own conduct") (citation and punctuation omitted). But Wilann's argument is dependant upon there being at least an issue of material fact as to whether Georgia Power failed to correctly instruct Caffrey as to the

18

boundaries of the Easements. However, as we concluded in Divisions 1 and 3, above, the center line of the Easements was established by the placement of the original poles, and the Easements have not been abandoned. Georgia Power's construction services supervisor averred that before Caffrey began clearing, Georgia Power's right-of-way was located and flagged, with Caffrey instructed to limit its clearing activities to the right-of-way. Accordingly, the evidence shows only that Georgia Power gave Caffrey proper direction as to the boundaries of the right-of-way.

The remaining issue, as framed by Wilann, is whether Georgia Power is liable as "Caffrey improperly left stumps in the ground of the eastern dam which has resulted in unsafe conditions." The undisputed evidence is that Caffrey controlled the time, manner, and method of executing the removal of trees, and Wilann does not show that the alleged impropriety in leaving the stumps was pursuant to the plan and direction of Georgia Power. Because Georgia Power "did not retain the right to direct or control the time and manner of executing the work or interfere and assume control so as to create the relation of master and servant," the trial court correctly concluded that Caffrey was an independent contractor and Georgia Power could not be held liable for Caffrey's work. *Perry v. Ga. Power Co.*, 278 Ga. App. 759, 761 (1) (629 SE2d 588) (2006).

(c) Wilann further explains that its claims are not solely reliant on the determination of whether Caffrey was an independent contractor or the application of the traditional rules for determining the scope of liability of an employer for the acts of an independent contractor. Rather, Wilann contends, these questions yield to "the constitutional duty imposed upon a condemnor to pay compensation for the taking or damaging of private property for public purposes whether or not such taking or damaging was done by an independent contractor hired by the condemnor."[3] *Woodside v. Fulton County*, 223 Ga. 316, 321 (1) (b) (155 SE2d 404) (1967). But the clearing work performed by Caffrey was not done pursuant to the power of eminent domain but pursuant to Georgia Power's property rights under the Easements. As we have said, "the basis for allowing recovery directly from a public utility whose independent contractor damages property in the exercise of a taking under eminent domain but prohibiting such direct recovery in other cases [is based on] the fact that one injury arises from a constitutional taking and the other injury arises from a traditional tort." *Bell South Telecom. v. Widner*, 229 Ga. App. 634, 637 (4) (495 SE2d 52) (1997).

___

[3] Wilann also suggests that Caffrey was engaged in a "public works project," and its actions should be viewed accordingly. The evidence does not show that Caffrey was "a contractor engaged in public work under contract with the State or one of its political subdivisions." *Abercrombie v. Ledbetter-Johnson Co.*, 116 Ga. App. 376 (157 SE2d 493) (1967).

20

Compare *Ga. Power Co. v. Jones*, 122 Ga. App. 614 (178 SE2d 265) (1970) (where damage alleged to arise from wilful trespass on property adjacent to certain property that was the subject of pending condemnation proceeding between the parties, defendant could not escape liability on ground that the injury was caused by an independent contractor).

In light of the foregoing, Wilann shows no error, and the trial court's grant of summary judgment to Georgia Power is affirmed.

*Judgment affirmed. Barnes, P. J., and McFadden, J., concur.*