71639. SLATER v. CANAL WOOD CORPORATION OF
AUGUSTA.
71640. JACKSON v. CANAL WOOD CORPORATION OF
AUGUSTA.
(345 SE2d 71)

Pope, Judge.

Plaintiff Deborah Ann Slater, individually and as administratrix of the estate of her deceased father, James Horace Slater, brought this wrongful death action against defendants James Earl Jackson and Canal Wood Corporation of Augusta d/b/a Southland Timber Company. James Slater was killed as the result of a collision between his vehicle and a log truck owned and operated by defendant Jackson. At the time of the collision Jackson was hauling logs pursuant to a written "cut and haul" contract with Canal Wood. Plaintiff asserts

that Jackson's negligence caused her father's death and bases her claim against Canal Wood on two theories of liability: (1) the doctrine of respondeat superior, alleging a master/servant relationship between Canal Wood and Jackson; and (2) Canal Wood's negligent hiring of Jackson, alleging that Canal Wood knew or should have known of Jackson's alleged incompetence to operate a large, heavily loaded vehicle upon the public highways. Both defendants denied any liability, and following discovery Canal Wood moved for summary judgment, countering plaintiff's assertions of liability by presenting evidence showing that its relationship with Jackson was one of employer/independent contractor and also showing that it had no knowledge of Jackson's purported "incompetence." These appeals arise from the trial court's grant of Canal Wood's summary judgment motion.

1. RESPONDEAT SUPERIOR. "Under OCGA § 51-2-4, '(a)n employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer.' The chief test to be applied in determining whether a person is employed as a servant or as an independent contractor has long been and continues to be whether the contract gives, or the employer assumes, the right to control the time, manner, and method of the performance of the work, as distinguished from the right merely to require certain definite results in conformity with the contract. [Cits.] . . . With regard to the 'independent business' requirement set forth in the code section, the test is essentially whether the contractor has a bon[a] fide existence apart from the employer or functions instead as the employer's alter ego." *Bowman v. C. L. McCord &c., Inc.*, 174 Ga. App. 914, 915 (331 SE2d 882) (1985). The Restatement, Second, Torts § 414 states the rule thusly: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." See OCGA § 51-2-5 (5). Although the relationship between an alleged master and servant is generally a question of fact to be decided by a jury, there are cases presenting factual situations wherein this issue has been decided as a matter of law. *Lawson Prods. v. Rousey*, 132 Ga. App. 726 (1) (209 SE2d 125) (1974).

Canal Wood is a "broker"; i.e., it purchases timber from various sellers for resale to wood processors, contracting with various independent producers such as Jackson to cut, haul and deliver the timber. In support of its motion for summary judgment Canal Wood relied upon paragraph 11 of its contract with Jackson in effect at the time of the subject collision which provided: "It is understood and agreed as follows: that Contractor [Jackson] is an independent forest

products Contractor and Owner [Canal Wood] exercises no control [of] Contractor's operations; that Owner does not supervise Contractor's methods and manner of work and has no authority to hire or fire any of Contractor's employees; that Contractor is not Owner's agent, not its employer, and Contractor is without authority to do any act in Owner's name; that Contractor will produce, load, transport and deliver all forest products covered by this agreement in full compliance with the Federal Occupational Safety and Health Act (OSHA) of 1970, as amended, the Federal Fair Labor Standards Act of 1938, as amended, and all other applicable State and Federal laws." This language is essentially repeated in the "wood settlement sheet" executed by Jackson upon payment for services rendered pursuant to the contract during the week of the collision. Language of similar import is also contained in two additional agreements whereby Jackson purchased workers' compensation and general liability insurance from Canal Wood.

By affidavit Canal Wood's area manager averred that Canal Wood does not control the hours which loggers must work to complete the contract; that it does not control what equipment the loggers must use to perform the contract nor the maintenance of that equipment; that it does not control the number of workers the loggers must use to complete the contract, nor does it control the manner of compensation of said workers; that it does not control the manner in which the loggers cut the trees and load them on trucks for transportation; that it does not control how the loggers operate their trucks; and that its only connection with the performance of a cut and haul contract is to make sure that the work is being performed according to the terms of the contract. Also by affidavit the president of Canal Wood testified that at all times pertinent to this case Jackson was an independent contractor; that the corporation did not train, supervise, restrict or otherwise exercise any control whatsoever over the manner and means by which Jackson went about producing wood pursuant to the contract; and that the rights and obligations of Jackson and Canal Wood are fully set forth in the contract and wood settlement sheet.

By the foregoing evidence Canal Wood successfully pierced the allegations in the complaint of liability under the doctrine of respondeat superior, and plaintiff was thus required to respond by setting forth a specific fact or facts showing a genuine issue for trial. *Withrow Timber Co. v. Blackburn*, 244 Ga. 549 (261 SE2d 361) (1979). As noted in *Withrow Timber*, if the other fact is direct evidence, that is sufficient to allow the case to go to the jury; if the other fact is circumstantial evidence, it must be inconsistent with the defendant's evidence, or if consistent, it must demand a finding of fact on the issue in favor of the plaintiff.

In opposition to Canal Wood's motion for summary judgment,

plaintiff cites to a considerable number of circumstances of record which, she asserts, tend to show Canal Wood's control over Jackson's logging operations. The majority of these circumstances, however, are consistent with Canal Wood's evidence and do not demand a finding in favor of plaintiff. For example, the contract required that Jackson carry automobile, general liability, and workers' compensation insurance. The purchase of automobile insurance is mandated by statute. OCGA § 33-34-10. Jackson purchased the general liability and workers' compensation insurance from Canal Wood which in turn deducted the premiums from its payments to Jackson under the cut and haul contract. These circumstances provide no indicia of a master/servant relationship. See *Hampton v. McCord*, 141 Ga. App. 97 (1) (232 SE2d 582) (1977).

The contract also required Jackson to adhere to the standards of the Occupational Safety and Health Act of 1970. Additionally, in light of his purchase of general liability and workers' compensation insurance from Canal Wood, Jackson was required to comply with certain safety requirements established by Canal Wood, e.g., the wearing of certain safety clothing, keeping workers at least two tree lengths from any falling operation, and prohibiting any work around lodged trees (all such trees to be pulled down by mechanical means as soon as possible). These circumstances, like those mentioned above dealing with insurance, provide no indicia of a master/servant relationship. "[T]he right to observe the fulfillment of the safety requirements with the right to order them fulfilled if the contractor did not do so in the contract is not such control of the work as intended by § 414 of the Restatement 2d, Torts, [or OCGA § 51-2-4] so as to impose liability on the defendant. Section 414 Restatement 2d, Torts, under comment c, reads as follows: 'In order for the rule stated in this section to apply, the employer must have retained at least some degree of control over the manner in which the work was done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, as to operative details. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.' " *Moushey v. U. S. Steel Corp.*, 374 F2d 561, 568 (3rd Cir. 1967). See *DeLoach v. Thelen*, 233 Ga. 350, 352 (211 SE2d 304) (1974), and cits.; *William v. Fenix & Scission, Inc.*, 608 F2d 1205, 1209 (9th Cir. 1979). It follows that Canal Wood's reservation in the contract of the right to inspect Jackson's operations, and the exercise of that right, also provide no basis for finding a master/servant relationship. See *Bentley v. Jones*, 48 Ga.

App. 587, 592-93 (173 SE 737) (1934). "It is well recognized that merely taking steps to see that the contractor carries out his agreement, by supervision of the intermediate results obtained, or reserving the right of dismissal on grounds of incompetence, is not such interference and assumption of control as will render the employer liable. [Cits.]" *American Security Life Ins. Co. v. Gray*, 89 Ga. App. 672, 674 (80 SE2d 832) (1954).

Finally, the contract required Jackson to "within [one day] after the execution of this agreement, enter upon the above described lands for the single purpose of removing the trees herein covered by conventional methods, and in one continuous operation." Canal Wood's president interpreted the phrase "conventional methods" as meaning the utilization of standard forestry equipment such as chainsaws and skidders, "as opposed to howitzers or forty millimeter can[n]ons, or that type of thing . . . We do not control the method that he uses to cut the trees . . . He can go in and use chainsaws exclusively, tote it on his back to the mill if he wants, or he can have shears and skidders and the latest technology. [T]he purpose of the language 'conventional methods' is simply to set forth some standard industry practice that will not result in abnormal, unusual damage to the underlying land [as] there may be a clause in our contract with the landowner that says the same 'conventional methods of harvesting.'" Also, although in practice a contract was sometimes not completed in one continuous operation due to market conditions or weather or other factors, either party might approach the other about the possibility of moving Jackson's operation to another tract. In our view these circumstances too are not inconsistent with the employer/independent contractor relationship as they fail to show that Jackson "is controlled as to his methods of work, as to operative details." See *Banks v. Ellijay Lumber Co.*, 59 Ga. App. 270 (4) (200 SE 480) (1938). Compare *Jordan v. Townsend*, 128 Ga. App. 583 (197 SE2d 482) (1973).

There are a plethora of additional circumstances cited by plaintiff too numerous to further burden an already lengthy opinion. Suffice it to say that we have painstakingly reviewed each and every circumstance cited. The overwhelming number of these circumstances is simply not inconsistent with the employer/independent contractor relationship when viewed in light of the record as a whole. Those few circumstances which on the surface appear to be inconsistent with the employer/independent contractor relationship are either neutralized by Canal Wood's uncontradicted explanations which adequately explain the perceived inconsistency, or are so inconsequential when viewed in light of the evidence to the contrary as to establish no genuine issue of fact. What the evidence clearly does establish is a paternalistic relationship whereby Canal Wood provides for or assists Jackson in virtually all aspects of his business, from assisting in insurance

claims and obtaining necessary credit, to paying advances and providing field communications. What the evidence does not establish is any right or assumption by Canal Wood to control the time, manner, and method of the performance of Jackson's work under the contract, nor does it establish Jackson as Canal Wood's alter ego. Compare *Wood v. Brunswick Pulp &c. Co.*, 119 Ga. App. 880 (169 SE2d 403) (1969). Accordingly, the trial court properly granted Canal Wood's motion for summary judgment as to the doctrine of respondeat superior.

2. NEGLIGENT HIRING. In light of Canal Wood's uncontradicted evidence that it had no knowledge of Jackson's alleged "incompetence" and the total absence of any evidence to show that it should have known, the trial court also properly granted Canal Wood's motion for summary judgment on the issue of negligent hiring. See *Slaton v. B & B Gulf Svc.*, 178 Ga. App. 701 (2) (344 SE2d 512) (1986).

*Judgment affirmed. McMurray, P. J., and Carley, J., concur.*

DECIDED APRIL 22, 1986 —
REHEARINGS DENIED MAY 2, 1986 AND MAY 9, 1986 —

*Dwight T. Feemster, Robert J. Duffy*, for appellant (case no. 71639).

*Charles W. Brannon, Jr.*, for appellant (case no. 71640).

*Wiley A. Wasden III, James M. Thomas*, for appellee.