A10A1635. YANCEY v. WATKINS et al.
A10A1636. USSERY v. WATKINS et al.
(708 SE2d 539)

DOYLE, Judge.

Leland Timothy Watkins, Michael Edwin Watkins, and Leland Brian Watkins (collectively, "Watkins Farm") sued Stacey Bloodsworth, Tony Yancey, and Milton Ussery for crop damage allegedly caused by the drifting of chemicals aerially applied by Bloodsworth to Ussery's neighboring cotton crop. The trial court denied the defendants' motions for summary judgment and certified the ruling for immediate review. This Court granted applications for interlocutory review filed by Yancey (Case No. A10A1635) and Ussery (Case No. A10A1636). We have consolidated the cases for review, and for the reasons that follow, we reverse in Case No. A10A1635 and affirm in Case No. A10A1636.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the material portions of the record show that Yancey farmed a cotton crop and helped Ussery, his brother-in-law, farm Ussery's separate cotton crop. Yancey used a combination of his own equipment and Ussery's equipment to prepare and plant Ussery's cotton crop. Yancey had no ownership interest in Ussery's property or crop, nor did he participate in the yield. At the end of the year, Ussery paid him what the men estimated Yancey's work was worth.

Adjacent to Ussery's cotton field was Watkins Farm's crop of pepper plants. In the fall of 2006, after conferring with a cotton "scout," Ussery determined that the timing was appropriate to apply certain chemicals, including a defoliant, to the cotton crop. He arranged for Bloodsworth to apply the chemicals to his crop from a crop-dusting airplane. Yancey, as part of his regular employment with a farm supply warehouse, delivered the chemicals from the warehouse to the airport where Bloodsworth operated. Bloodsworth then aerially applied the defoliant to the cotton crop, and during the process, some defoliant allegedly drifted onto Watkins Farm's adjacent pepper crop and damaged it.

After discovering the damaged pepper crop, Watkins Farm sued

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

Bloodsworth, Yancey, and Ussery, alleging claims for negligence and trespass. Yancey and Ussery moved for summary judgment, which motions were denied, giving rise to these interlocutory appeals.

### Case No. A10A1635

Yancey's summary judgment motion relied on a theory that he was a mere employee of Ussery, and there is no evidence that the pepper crop damage arose from any breach of a duty he owed to Watkins Farm. The evidence shows that other than delivering the chemicals to the airport on behalf of the farm supply warehouse (his regular employer), Yancey himself was not involved in Bloodsworth's application of the chemicals. In response to Yancey's summary judgment motion, as on appeal, Watkins Farm contended that Yancey was engaged in a joint venture with Ussery, and therefore any negligence on the part of Ussery, as the landowner who employed Bloodsworth, could be imputed to Yancey. In light of the undisputed evidence of record, this argument fails.

> A joint venture arises where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control (provided the arrangement does not establish a partnership), so as to render all joint venturers liable for the negligence of the other. . . . For a joint venture to exist, *there must be not only a joint interest in the purpose of the enterprise but also an equal right, express or implied, to direct and control the conduct of one another in the activity causing the injury.*[2]

Here, there is no evidence that Yancey had an equal right to control how Ussery farmed his cotton. There is undisputed evidence that Yancey was paid by Ussery to help farm Ussery's cotton, as ultimately directed by Ussery. Ussery owned both the land and the cotton grown on it, and Yancey had no ownership interest in either.[3] Yancey had no right to control Ussery's decision to farm his land or whether to dispose of the cotton it yielded, if any. Accordingly, the

---

[2] (Punctuation omitted; emphasis supplied.) *Williams v. Chick-fil-A, Inc.*, 274 Ga. App. 169, 170 (617 SE2d 153) (2005). See *First Nat. Bank of Madison v. Vason*, 164 Ga. App. 309, 311 (2) (297 SE2d 85) (1982) (each party must have a joint interest in the objects and purposes of the undertaking, as well as the right to direct and control the conduct of the other parties).

[3] Watkins Farm alludes to evidence that Bloodsworth erroneously believed that Yancey owned Ussery's land, but this mistaken belief as to ownership (offered as evidence of a joint venture) is ultimately a legal assertion, which is insufficient to preclude the grant of summary judgment. See *Groover Engineering Co. v. Capital Assoc., Inc.*, 169 Ga. App. 480 (313 SE2d 498) (1984); *Smith v. Forrester*, 156 Ga. App. 79, 80 (1) (274 SE2d 101) (1980).

undisputed facts show that Yancey was not engaged in a joint venture with Ussery, and any negligence on Ussery's part, imputed or otherwise, is, as a matter of law, not attributable to Yancey. Therefore, the trial court erred by denying Yancey's motion for summary judgment.

### Case No. A10A1636

In this appeal, Ussery contends that the trial court erred by denying him summary judgment because Bloodsworth was an independent contractor not subject to his control, and any negligence on Bloodsworth's part was therefore not imputable to Ussery. However, in light of the dangerous nature of aerial application of chemicals to open land, we affirm the trial court's judgment.

We first address whether the record demonstrates a genuine issue of material fact as to whether Bloodsworth was an independent contractor of Ussery.

Under OCGA § 51-2-4, an employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer. The chief test to be applied in determining whether a person is employed as a servant or as an independent contractor has long been and continues to be whether the contract gives, or the employer assumes, the right to control the time, manner, and method of the performance of the work, as distinguished from the right merely to require certain definite results in conformity with the contract. With regard to the "independent business" requirement set forth in the code section, the test is essentially whether the contractor has a bona fide existence apart from the employer or functions instead as the employer's alter ego. The Restatement, Second, Torts § 414 states the rule thusly: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Although the relationship between an alleged master and servant is generally a question of fact to be decided by a jury, there are cases

presenting factual situations wherein this issue has been decided as a matter of law.[4]

Here, Ussery had a very limited role in actually directing or controlling Bloodsworth's crop dusting. Ussery hired Bloodsworth on a one-time basis to apply the chemicals, but there is no evidence that Ussery controlled precisely when and how Bloodsworth flew during the crop dusting. As explained in Ussery's deposition, he informed Bloodsworth that the chemicals were at the airport and asked Bloodsworth to apply the chemicals "whenever he could get to it." Ussery asked Bloodsworth to perform the defoliation based on the recommendation from a cotton scout that his crop was "ready," and Ussery believed there was "no push [for time]. If you do it today[,] okay. If you do it three days from now, it's okay."

Furthermore, Bloodsworth deposed that he operated his flying service as an independent business called Owensboro Ag Service, through which he performed work for a number of farmers. In the present case, Bloodsworth explained that he himself decided when to apply the chemicals according to the weather and his other scheduled work. Bloodsworth alone determined the method and manner of applying the chemicals, according to his past experience and current observations made on the day he flew. Based on this record, we conclude that Bloodsworth was acting as an independent contractor.[5]

Nevertheless, OCGA § 51-2-5 (2) provides that an employer is liable for the negligence of his contractor "[i]f, according to the employer's previous knowledge and experience, the work to be done is in its nature dangerous to others however carefully performed." Ussery had previous experience with crop dusters on his land, including one mishap when several of his trees were damaged by overspray. Thus, Watkins Farm argues Ussery should have known that the aerial application of chemicals to crops is itself an activity of such a dangerous nature that the duty of care is nondelegable.[6] Although Georgia courts have not directly addressed this question, our courts have noted in dicta that inherently dangerous activities in this context "have been held to include ... spraying from air-planes."[7] The rationale for this view was stated in *Hammond Ranch*

---

[4] (Citations and punctuation omitted.) *Slater v. Canal Wood Corp. of Augusta*, 178 Ga. App. 877, 878 (1) (345 SE2d 71) (1986).

[5] See *Cooper v. Olivent*, 271 Ga. App. 563, 564 (1) (610 SE2d 106) (2005) (affirming grant of summary judgment in the absence of evidence of employer's control of time or manner or method of contractor's work); *Perry v. Soil Remediation, Inc.*, 221 Ga. App. 386, 387-388 (1) (471 SE2d 320) (1996) (evidence insufficient to create question of fact as to party's independent contractor status); *Slater v. Canal Wood Corp.*, 178 Ga. App. at 882 (1).

[6] See, e.g., *Community Gas Co. v. Williams*, 87 Ga. App. 68, 80 (2) (73 SE2d 119) (1952).

[7] (Citations omitted.) Id. See also *Ogles v. E. A. Mann & Co.*, 277 Ga. App. 22, 25 (1) (625

*Corp. v. Dodson*:[8]

> [T]he law will not allow one who has a piece of work to be done that is necessarily or inherently dangerous to escape liability to persons or property negligently injured in its performance by another to whom he has contracted such work. This is especially true where the agency or means employed to do the work, if not confined and carefully guarded, is liable to invade adjacent property, or the property of others, and destroy or damage it. The defendant was within its legal rights in depositing the insecticide on its lettuce field for the purpose of ridding it of the worms with which it was infested, and it could do this work itself or it could contract it, but, because of the very great likelihood of the poisonous dust or spray spreading to adjoining or nearby premises and damaging or destroying valuable property thereon, it could not delegate this work to an independent contractor, and thus avoid liability.[9]

Furthermore, as explained by Bloodsworth in his deposition, the aerial application of chemicals requires him to fly approximately six to eight feet above the crop — at times only two to three feet above obstacles in the field such as irrigation equipment. And considering the likelihood of encountering nearby power lines, trees, or other obstacles, the hazards inherent in crop dusting are readily apparent.

Furthermore, at least ten other jurisdictions have concluded that crop dusting is an inherently dangerous activity such that an employer cannot escape vicarious liability for his independent contractor's negligence.[10] In light of the cases opining similarly in Georgia, and in light of the nature of the task, we hold that the aerial

---

SE2d 425) (2005) (quoting same in the context of acceptance doctrine analysis).

[8] 199 Ark. 846 (136 SW2d 448) (1940), quoted favorably by *Community Gas Co.*, 87 Ga. App. at 80 (2) and quoting *S. A. Gerrard Co. v. Fricker*, 42 Ariz. 503, 507 (27 P2d 678) (1933) (citing Wisconsin and Kansas precedent).

[9] *Hammond Ranch Corp.*, 199 Ark. at 852.

[10] See *Boroughs v. Joiner*, 337 S2d 340, 343 (Ala. 1976) ("We hold that aerial application of insecticides and pesticides falls into the intrinsically or inherently dangerous category and, therefore, the landowner cannot insulate himself from liability simply because he has caused the application of the product to be made on his land by an independent contractor."); *Lawler v. Skelton*, 241 Miss. 274, 288 (130 S2d 565) (1961) ("The owner of the premises may not delegate the work of dusting or spraying a crop with poisonous insecticides to an independent contractor and thus avoid liability."); *Burke v. Thomas*, 313 P2d 1082, 1088 (Okl. 1957); *Pendergrass v. Lovelace*, 57 NM 661, 663 (262 P2d 231) (1953); *Faire v. Burke*, 363 Mo. 562, 564 (252 SW2d 289) (1952); *Alexander v. Seaboard Air Line R. Co.*, 221 SC 477, 486 (71 SE2d 299) (1952); *McKennon v. Jones*, 219 Ark. 671, 674 (244 SW2d 138) (1951); *Pannella v. Reilly*, 304 Mass. 172, 173 (23 NE2d 87) (1939); *Miles v. A. Arena & Co.*, 23 Cal. App. 2d 680, 683 (73 P2d 1260) (1937); *S. A. Gerrard Co. v. Fricker*, 42 Ariz. at 507. See also Restatement of Torts (Second) § 427 ("One who employs an independent contractor to do work involving a special

application of chemicals to open land involves sufficient inherent danger that it falls within the scope of OCGA § 51-2-5 (2), such that an employer can be liable for the negligence of an independent contractor he hired to perform such work. Therefore, based on the record before us, material issues of fact remain as to Ussery's liability for harm caused by negligence in requesting or performing the crop dusting activity here, and we affirm the trial court's denial of summary judgment to Ussery.

*Judgment affirmed in Case No. A10A1636. Judgment reversed in Case No. A10A1635. Ellington, C. J., and Andrews, J., concur.*

DECIDED MARCH 9, 2011 —
RECONSIDERATION DENIED MARCH 24, 2011 — ▮▮▮▮▮▮

*Reinhardt, Whitley, Summerlin & Pittman, John R. Reinhardt, John T. Croley*, for appellants.

*Edenfield, Cox, Bruce & Classens, Gerald M. Edenfield, Susan W. Cox, Benjamin J. Colson*, for appellees.

---

danger to others which the employer knows or has reason to know to be inherent in or normal to the work . . . is subject to liability for physical harm caused . . . by the contractor's failure to take reasonable precautions. . . ."); *Prosser and Keeton on the Law of Torts* § 71, 512-516 (5th ed., West 1984) (inherently dangerous activities include crop dusting).