A11A0068. GEORGIA MESSENGER SERVICE, INC.
v. BRADLEY et al.
(715 SE2d 699)

DILLARD, Judge.

In this personal injury case, we granted Georgia Messenger Service, Inc.'s ("GMS") application for interlocutory appeal in order to review whether the trial court erred in denying GMS's motion for summary judgment. For the reasons noted infra, we affirm.

Viewing the evidence in the light most favorable to the non-movant, Vernetta Bradley,[1] the record shows that on the afternoon of September 20, 2005, courier John W. S. Wise, Jr. arrived in front of the Palisades Office Park in Dunwoody to make one of his many deliveries that day on behalf of GMS. Wise attempted to park in the service parking spot designated for deliveries, but it was occupied at that time by Bradley's security-guard vehicle, which she refused to move. Under time pressure and with many more scheduled deliveries, Wise parked directly in front of the building, "waved-off" Bradley's vocalized objections to his doing so, and then ran inside to deliver the package. Less than a minute later, Wise emerged from the building to find Bradley applying a "boot" to his vehicle. Wise asked Bradley not to place the boot on his car, but she refused to accommodate his request. At this point, Bradley claims that Wise "violently kicked [her] in the head,"[2] threw the boot into the bushes,

---

[1] *See, e.g.*, *Werner Enters. v. Lambdin*, 307 Ga. App. 813, 814 (706 SE2d 185) (2011) (citing *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991)).

[2] In contrast, Wise asserts only that he "pushed [Bradley] with his foot."

and then drove away. Wise continued making deliveries for GMS until 10:00 or 11:00 p.m. that evening.

Thereafter, Bradley sued Wise for assault and battery, and further asserted that GMS was both vicariously liable under the doctrine of respondeat superior for Wise's conduct and independently liable for its negligent hiring, negligent retention, and negligent entrustment of Wise. In *Georgia Messenger Service, Inc. v. Bradley*,[3] we reversed the trial court's denial of summary judgment to GMS on Bradley's negligence claims after concluding that they failed as a matter of law,[4] but then remanded the case to the trial court to consider whether Wise was an employee of GMS and, if so, whether he was working within the scope of that employment at the time of the incident so as to extend vicarious liability to GMS.[5] On remand, the trial court denied GMS's motion for summary judgment, concluding that genuine issues of material fact remained as to whether (1) GMS controlled the time, manner, and method of Wise's delivery services, such that he was an employee rather than an independent contractor, and (2) Wise's allegedly tortious conduct was within the scope of that employment relationship. This appeal follows.

1. GMS contends that the trial court erred in denying summary judgment as to Bradley's claims, arguing that it cannot be held vicariously liable for the alleged actions of Wise because it did not employ him and, as such, did not direct or control the time, manner, and execution of the work he performed on its behalf as an independent contractor. We disagree.

In considering GMS's argument, we begin by noting that an employer is generally not liable for the torts of an independent contractor.[6] The historical reason for this common-law rule is that because "the employer has no right of control over the manner in which the work is to be done, it is to be regarded as the contractor's own enterprise, and he, rather than the employer, is the proper party to be charged with the responsibility for preventing the risk[.]"[7] To this end, when a "contract of employment clearly denominates the other party as an independent contractor, that relationship is presumed to be true unless the evidence shows that the employer

---

[3] 302 Ga. App. 247 (690 SE2d 888) (2010).

[4] *Id.* at 249-50 (2).

[5] We were precluded from conducting meaningful review of these issues because GMS failed to timely file the deposition transcripts of both Bradley and Wise. *Id.* at 249 (1).

[6] *See* OCGA § 51-2-4 ("An employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer.").

[7] *Peachtree-Cain Co. v. McBee*, 254 Ga. 91, 91 (327 SE2d 188) (1985) (citation and punctuation omitted).

assumed such control."[8]

The test for determining whether an employer is exercising a degree of control over an independent contractor's work such that the law will deem the independent contractor to be a servant of that employer—thus making the employer vicariously liable for any wrongful acts committed by the contractor—is whether

> the contract gives, or the employer assumes, the right to control the time, manner, and method of the performance of the work, as distinguished from the right to merely require certain definite results in conformity with the contract.[9]

Put another way, "the test is essentially whether the contractor has a bona fide existence apart from the employer or functions instead as the employer's alter ego."[10]

Here, the employment contract between Wise and GMS designates Wise as an independent contractor. Nevertheless, we agree with the trial court that there is a genuine issue of material fact as to whether the degree of control exercised by GMS over Wise's delivery services was such that GMS may be held liable for Wise's allegedly tortious actions against Bradley. Specifically, Wise maintains that, as a practical matter, he (1) "was to perform duties on behalf of [GMS] as the duties were assigned to [him]," (2) "had no choice as to which jobs [he] performed,"[11] and (3) "could only work for [GMS], and that [he] could work for no other courier companies[.]" Moreover, despite the fact that GMS's contract with Wise designated him as an independent contractor, Wise's claim that he was only permitted to work for GMS is substantiated, to some degree, by this same contract, which prohibited him from allowing his vehicle "to be used by anyone other than [GMS]." Thus, the trial court did not err in denying GMS summary adjudication on this particular basis.[12]

2. Next, GMS argues that even if Wise was its servant at the time

---

[8] *McGuire v. Ford Motor Credit Co.*, 162 Ga. App. 312, 313 (290 SE2d 487) (1982) (citation and punctuation omitted).

[9] *Slater v. Canal Wood Corp. of Augusta*, 178 Ga. App. 877, 878 (1) (345 SE2d 71) (1986) (citation and punctuation omitted).

[10] *Id.*

[11] During his deposition, Wise noted that on days when he was not scheduled to work he would sometimes receive calls from GMS asking him if he was available to make deliveries, and that he always agreed to do so when he received such requests "because if you don't, then you don't get any more work . . . they just stop calling."

[12] *Cf. American Ass'n of Cab Cos., Inc. v. Parham*, 291 Ga. App. 33, 35-36 (1) (661 SE2d 161) (2008) (holding that some evidence existed to support jury's conclusion that cab companies exerted control over the time, manner, and method of cab driver's employment to the extent that cab companies were vicariously liable for cab driver's actions).

he allegedly harmed Bradley, it is still not liable for Wise's actions because they were not done in the scope of his employment or in furtherance of GMS's business. We disagree.

Under Georgia law, "[t]wo elements must be present to render a master liable for his servant's actions under respondeat superior: first, the servant must be in furtherance of the master's business; and, second, he must be acting within the scope of his master's business."[13] If a tort is committed by an employee for reasons unrelated to that employment (e.g., "for purely personal reasons disconnected from the authorized business of the master"), the employer is not liable.[14] Summary judgment for the master, then, is appropriate when the evidence "shows that the servant was not engaged in furtherance of his master's business but was on a private enterprise of his own."[15] Finally, the question of whether "the servant at the time of an injury to another was acting in the prosecution of his master's business and in the scope of his employment is for determination by the jury, except in plain and indisputable cases."[16]

And here, we conclude that a genuine issue of material fact remains as to whether, at the time of the alleged assault on Bradley, Wise was acting in furtherance of GMS's business and within the scope of same. Specifically, Wise testified that, at the time of his altercation with Bradley, he was under an enormous amount of pressure from GMS, claiming that (1) his supervisor at GMS had been "riding his ass," (2) he was rushing to get the packages assigned to him by GMS delivered, and (3) he had been assigned more packages than he could possibly deliver within the time allotted by GMS.[17] Wise maintains that this is why, that at the time of the incident in question, he illegally parked his vehicle in order to timely deliver the package, and why he then confronted Bradley about placing a boot on his vehicle for having done so.[18] Indeed, Wise

---

[13] *Drury v. Harris Ventures, Inc.*, 302 Ga. App. 545, 546-47 (1) (691 SE2d 356) (2010) (quoting *Leo v. Waffle House*, 298 Ga. App. 838, 842 (3) (681 SE2d 258) (2009)).

[14] *Drury*, 302 Ga. App. at 546-47 (1); *Leo*, 298 Ga. App. at 842 (3).

[15] *See, e.g., Drury*, 302 Ga. App. at 546-47 (1); *Leo*, 298 Ga. App. at 842 (3).

[16] *Drury*, 302 Ga. App. at 546-47 (1); *Leo*, 298 Ga. App. at 842 (3).

[17] During his deposition, Wise stated

I was pissed because . . . I was in a real hurry and I knew I was going to be—this the second day of—I had worked fifteen hours the day before, I was working eighteen hours that day and, you know, tired, in a hurry, you're not thinking . . . . I just think I was under a lot of pressure and with a lack of sleep and, you know, a lot of pressure to get stuff done.

[18] During his deposition, Wise was asked whether GMS had a policy addressing how couriers were "to handle a situation when a vehicle was booted." In response, he noted that while GMS had no such policy, "[GMS] would prefer you not get booted because it would slow you down."

testified that after he made contact with Bradley and she fell backwards, he pulled off the boot, tossed it in the bushes, and drove away, so that he could "get out of there" and "finish his deliveries." In this respect, it matters not that Wise's altercation with Bradley may have been motivated, in part, by personal malice.[19] Wise's statement that his "concern was to get out of there and . . . finish [his] deliveries," which were all for GMS and which were being done under intense time pressure imposed on him by GMS, is enough for a jury to conclude that Wise's alleged assault of Bradley was done within the scope of GMS's business and in furtherance of its interests.[20]

For all of the foregoing reasons, we affirm the trial court's denial of GMS's motion for summary judgment.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED JULY 12, 2011 —
RECONSIDERATION DENIED JULY 27, 2011 — 

*Harper, Waldon & Craig, Daniel C. Prout, Jr., Kevin P. Reardon*, for appellant.
*Bruce A. Hagen, Randall E. Fry*, for appellees.

---

[19] *See, e.g., Rogers v. Fred R. Hiller Co. of Ga.*, 214 Ga. App. 448, 448 (1) (448 SE2d 46) (1994) (holding that "[t]he law provides that the master is liable for the wilful torts of his servant acting in the prosecution and within the scope of the master's business, and this is true even though the servant, at the time of the commission of such tort may evidence anger, malice, or ill will" (citation and punctuation omitted)); *Smith v. Myrick*, 205 Ga. App. 339, 340 (1) (422 SE2d 236) (1992) (same).

[20] *See, e.g., Brown v. AMF Bowling Centers*, 236 Ga. App. 277, 278 (1) (511 SE2d 619) (1999) (holding that employer was not entitled to summary judgment in case involving a customer who was injured when bartender broke up fight because keeping the peace could be inferred as a bartender's duty); *Reynolds v. L&L Mgmt.*, 228 Ga. App. 611, 613-14 (1) (492 SE2d 347) (1997) (holding that employer was not entitled to summary judgment when restaurant manager who was involved in altercation with customer was responsible for resolving complaints); *Bacon v. News-Press & Gazette Co.*, 188 Ga. App. 703, 704-05 (373 SE2d 797) (1988) (holding that television station was not entitled to summary judgment because questions of fact existed as to whether cameraman's action in pointing gun at plaintiff was to prevent plaintiff from thwarting reporter's pursuit of news story so as to constitute an act in futherance of television station's business).