### A11A0792. ORTON v. MASQUERADE, INC. et al.
(716 SE2d 764)

DILLARD, Judge.

In this personal-injury case, Daniel Lee Orton sued Masquerade, Inc., Christopher Wynne, and Shawn Hickum, alleging that Masquerade and Wynne were vicariously liable for the injury he suffered as a result of Hickum's negligence during a performance at Masquerade. The trial court granted summary judgment in favor of Masquerade and Wynne, and Orton appeals, arguing that the trial court erred in finding as a matter of law that Masquerade and Wynne were not vicariously liable for Hickum's negligence because Hickum was an independent contractor. For the reasons noted infra, we affirm.

Viewed in the light most favorable to the nonmovant,[1] the record shows that in the early morning hours of July 22, 2007, Orton was a patron at Masquerade, which operates as a nightclub and concert venue. The entertainment that night entailed a deejay—Masquerade employee Wynne—playing dance music during a drag show, in which female impersonators lip-synced to songs played on the venue's sound system while performing lively dance routines. Wynne hired the performers for that night's festivities via oral agreements, paid them in cash based on door receipts, and told them the approximate time they would be going on stage. But neither he nor any other Masquerade employee otherwise exercised any supervisory control over the performers' specific routines.

Not long before the drag show was scheduled to conclude, Hickum—who performed under the stage name "Genre"—began his routine, in which he sang and danced while dressed as a dominatrix,[2] brandishing a whip. At some point during his performance, Hickum cracked his whip in the direction of the audience at the edge of the stage and, in doing so, struck Orton in the left eye, seriously injuring him.

Thereafter, Orton filed a personal-injury action against Masquerade, Wynne, and Hickum, in which he asserted that Masquerade and Wynne (collectively "Masquerade") were vicariously liable for Hickum's negligent actions. Masquerade filed a motion for summary judgment, arguing that Hickum was an independent contractor and that Masquerade was, therefore, not liable for Hickum's negligent conduct. The trial court granted Masquerade's motion, and this appeal follows.

Orton contends that the trial court erred in granting summary judgment for Masquerade. Specifically, he argues that the trial court erred in finding as a matter of law that Hickum was an independent contractor and, thus, likewise erred in concluding that Masquerade was not vicariously liable for Hickum's negligence. We disagree.

In considering Orton's argument, we begin by noting that an employer is generally not liable for the torts of an independent contractor.[3] The historical reason for this common-law rule is that

---

[1] *See, e.g., Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459, 459 (1) (486 SE2d 684) (1997).

[2] *See The Compact Oxford English Dictionary* 486 (2d ed. 1991) (defining "dominatrix" as a "female dominator; mistress, lady"); *see also* Urban Dictionary, http://www.urbandictionary.com/define.php?term=dominatrix (retrieved on Aug. 23, 2011) (defining "dominatrix" as, *inter alia*, "a woman who controls her partner mentally and physically, usually in a sexual way," and "is stereotypically pictured as wearing stiletto boots, [a] black leather outfit, and hold[ing] a whip").

[3] *See* OCGA § 51-2-4 ("An employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to

because "the employer has no right of control over the manner in which the work is to be done, it is to be regarded as the contractor's own enterprise, and he, rather than the employer, is the proper party to be charged with the responsibility for preventing the risk."[4] The ultimate test of whether the person employed is a servant or an independent contractor, then, is

> whether the employer, under the contract, whether oral or written, has the right to direct the time, the manner, the methods, and the means of the execution of the work, as contra-distinguished from the right to insist upon the contractor producing results according to the contract, or whether the contractor in the performance of the work contracted for is free from any control by the employer of the time, manner, and method in the performance of the work.[5]

Put another way, "the test is essentially whether the contractor has a bona fide existence apart from the employer or functions instead as the employer's alter ego."[6]

And here, Masquerade's oral agreements with the drag-show performers merely established the time when they would perform their routines and the amount they would be paid, but did not otherwise dictate the manner or method of their routines. Indeed, Masquerade did not even choose or supply the music to which the performers would dance and lip-sync or the costumes they would wear.[7] Nevertheless, Orton argues that because Masquerade had the ability to stop the show, had a general policy forbidding weapons (such as whips), and determined the approximate schedule for the female impersonators' performances, there is a genuine issue of fact as to whether Hickum was an employee as opposed to an independent contractor. We find this argument unavailing.

---

the immediate direction and control of the employer."); *Georgia Messenger Serv., Inc. v. Bradley*, 311 Ga. App. 148, 149 (1), n. 6 (715 SE2d 699) (2011) (same).

[4] *Georgia Messenger Serv.*, 311 Ga. App. at 149 (1) (punctuation omitted); *see also Peachtree-Cain Co. v. McBee*, 254 Ga. 91, 91 (1) (327 SE2d 188) (1985) (same).

[5] *Bell South Telecom. v. Widner*, 229 Ga. App. 634, 635 (1) (495 SE2d 52) (1997) (citations and punctuation omitted); *see also McKee Foods Corp. v. Lawrence*, 310 Ga. App. 122, 124 (712 SE2d 79) (2011) ("Control is the key question in determining the type of employment relationship created by a contract for services").

[6] *Yancey v. Watkins*, 308 Ga. App. 695, 697 (708 SE2d 539) (2011) (citation and punctuation omitted); *see also Georgia Messenger Serv.*, 311 Ga. App. at 150 (1) (same).

[7] *See* Restatement (Second) of Agency § 220 (2) (2011) ("In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered . . . (e) whether the employer or the workman supplies the instrumentalities [and] tools . . . for the person doing the work").

The

> general right to order the work stopped or resumed, to inspect its process or to receive reports, to make suggestions or recommendations and to prescribe alterations and deviations of the work performed . . . *does not establish* that the proprietor exercised control over the manner in which the independent contractor did its work.[8]

In fact, "[s]uch a general right does not mean that the contractor is controlled as to his methods of work."[9] Instead, "[t]here must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."[10] Thus, it matters not that Masquerade determined the approximate time a performer would begin his routine, or that it had a general policy of forbidding anyone from bringing weapons inside the venue, because neither of these undisputed facts creates a genuine issue of material fact as to whether Masquerade "controlled the *time, manner, and method* of executing the work."[11] To the contrary, no such control is evidenced here.[12]

Additionally, we find it highly relevant that Hickum did not perform his unique services on a regular basis or for a fixed period of time for Masquerade. While such a finding is not necessarily dispositive in this type of analysis, it is difficult to imagine a situation where a person or entity hired to perform certain services could be deemed to be an alter ego of an employer when those services are not (or are not intended to be) performed on a regular basis or for a fixed period of time.[13]

Accordingly, for all of the foregoing reasons, the trial court did

---

[8] *Feggans v. Kroger Co.*, 223 Ga. App. 47, 48 (1) (476 SE2d 822) (1996) (citation and punctuation omitted; emphasis supplied); *see also Englehart v. OKI America*, 209 Ga. App. 151, 152 (433 SE2d 331) (1993) (same), *disapproved on other grounds by Baker v. Harcon, Inc.*, 303 Ga. App. 749, 755 (b) n.6 (694 SE2d 673) (2010).

[9] *Feggans*, 223 Ga. App. at 48-49 (1) (citation and punctuation omitted).

[10] *Id.* (citation and punctuation omitted).

[11] *Larmon v. CCR Enterprises*, 285 Ga. App. 594, 596 (647 SE2d 306) (2007) (citation and punctuation omitted) (holding that the fact that employer required the work to be completed by a certain time did not preclude a finding that employee was an independent contractor as a matter of law); *see, e.g., Ross v. Ninety-Two West, Ltd.*, 201 Ga. App. 887, 891-92 (3) (412 SE2d 876) (1991) (holding that there was no evidence that company controlled the time, manner, and method of real estate agent's work despite the fact that company provided an office, telephone, secretary, and expected the agent to attend regular meetings).

[12] *Compare Georgia Messenger Serv.*, 311 Ga. App. at 150 (1) (holding that genuine issues of material fact remained as to whether courier was an independent contractor when the courier (1) was required to perform his duties as they were assigned to him, (2) had no choice as to which assignments he accepted, and (3) could not work for any other companies).

[13] *See* Restatement (Second) of Agency § 220 (2) (2011) ("In determining whether one acting for another is a servant or an independent contractor, the following matters of fact,

not err in granting summary judgment in favor of Masquerade based on its finding that Hickum was not functioning as the alter ego of Masquerade but was instead an independent contractor as a matter of law.[14]

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 14, 2011.

*Charles B. Tanksley, James C. Tribble,* for appellant.
*Carlock, Copeland & Stair, Wade K. Copeland, Lee P. Gutschen-ritter,* for appellees.

---

among others, are considered . . . (f) the length of time for which the person is employed . . . [and] (i) whether or not the parties believe they are creating the relation of master and servant").

[14] *See Yancey,* 308 Ga. App. at 697-98 ("Although the relationship between an alleged master and servant is generally a question of fact to be decided by a jury, there are cases presenting factual situations wherein this issue has been decided as a matter of law") (citation and punctuation omitted).