**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**April 8, 2021**

# In the Court of Appeals of Georgia

A21A0180, A21A0181. ADVANCED DISPOSAL SERVICES ATLANTA, LLC. v. MARCZAK et al.; and vice versa.

MERCIER, Judge.

Mark Marczak and his wife sued Advanced Disposal Services Atlanta, LLC ("ADS") and its employee, Lorenzo Bucknor, for damages after Bucknor hit Marczak outside of the Marczak home. ADS moved for summary judgment, arguing that it was not liable for Bucknor's actions or the Marczaks' damages. The trial court granted the motion in part, denied it in part, and these appeals followed. Because questions of fact remain on the Marczaks' claims, we affirm the denial of partial summary judgment in Case No. A21A0180, and we reverse the grant of partial summary judgment in Case No. A21A0181.

Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. See OCGA § 9-11-56 (c). We review a trial court's summary judgment ruling de novo, construing the evidence and all reasonable inferences in favor of the nonmoving party. See *Hardison v. Enterprise Holdings*, 331 Ga. App. 705 (771 SE2d 402) (2015).

So viewed, the evidence shows that ADS provided garbage and recycling pickup services to the Marczaks. On March 14, 2018, Marczak placed a bin full of recyclable material by the curb outside of his house for pickup. He also put an extra bag of recyclables on top of the bin. At some point, however, the wind blew the bag off of the bin and onto the Marczaks' driveway, where it remained.

Around 3:00 p.m., an ADS recycling truck driven by Bucknor arrived at the Marczak home. Bucknor retrieved the recyclables from the Marczaks' bin, but he did not pick up the loose bag of recycling from the driveway, which in his view was not "curbside" and thus not where recyclables needed to be for collection. When Marczak noticed that the bag was still on the driveway, he went outside, said "[t]his goes too," and tossed the bag toward Bucknor, who was emptying the recycling bin at a neighbor's house. Bucknor replied with an expletive, left the bag on the ground, and got into the cab of his truck.

2

Stating "[n]o, you take it, it's your job," Marczak threw the bag into the driver's side of the truck cab. Bucknor jumped out of the truck and hit Marczak in the face. He then returned to the truck cab briefly, but got out again and hit Marczak several more times, leaving Marczak unconscious and face-down on the driveway. By the time Marczak regained consciousness approximately 15 minutes later, police and emergency personnel had arrived, and he was taken to the hospital.

Marczak and his wife sued Bucknor and ADS for damages resulting from Marczak's injuries. With respect to ADS, they alleged that the company was responsible for Bucknor's actions under the theory of respondeat superior and directly liable for negligently training and retaining Bucknor.[1] The trial court subsequently granted summary judgment to ADS on the negligent retention claim, but denied summary judgment as to respondeat superior and negligent training. In Case Number A21A0180, ADS appeals from the denial of summary judgment on the respondeat superior and negligent training claims.[2] The Marczaks cross-appeal in Case Number

---

[1] The Marczaks' complaint also included a claim for negligent hiring, but they concede that the evidence does not support such a claim.

[2] ADS's appeal in Case No. A21A0180 originally came to us through a grant of interlocutory review.

3

A21A0181, challenging the grant of summary judgment on their negligent retention claim.

*Case Number A21A0180*

1. ADS first argues that it was entitled to summary judgment on the Marczaks' respondeat superior claim. Pursuant to OCGA § 51-2-2, "[e]very person shall be liable for torts committed by . . . his servant by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily." An employer, therefore, is responsible for the conduct of an employee acting in furtherance of and within the scope of the employer's business. See *Ga. Messenger Svc. v. Bradley*, 311 Ga. App. 148, 151 (2) (715 SE2d 699) (2011). If, on the other hand, the employee commits a tort "for reasons unrelated to that employment (e.g., for purely personal reasons disconnected from the authorized business of the master), the employer is not liable." Id. (citation and punctuation omitted). Whether an employee has acted in furtherance of and within the scope of his employment "is for determination by the jury, except in plain and indisputable cases." Id. (citation and punctuation omitted).

Undoubtedly, Bucknor was carrying out his ADS job responsibilities when he first encountered Marczak. ADS contends, however, that Bucknor necessarily (and

4

as a matter of law) "*abandoned* ADS's business of collecting recyclables when he engaged in a physical altercation following [Marczak] throwing a bag in his face." (emphasis in original). We disagree.

It appears that Bucknor's original decision to hit Marczak was a personal reaction to Marczak's conduct. As Bucknor recalled: "[Marczak] hit me with the [bag] — you know, I hit him back." But the evidence also shows that Bucknor retreated to his truck briefly after that first blow. He then got out of the truck, re-engaged in the altercation, and continued to hit Marczak, causing Marczak to fall and suffer injuries. Asked why he re-engaged after retreating, Bucknor testified that he was fearful that Marczak would take action against him as he tried to finish his recycling route:

> I had got out [of the truck] initially and, you know, I had — because he hit me, so I hit him, so now he's walking away, so — and I'm in the area, I've got to finish this whole neighborhood, so I was thinking that he, I don't know, was going to get a weapon or something, honestly, and follow me or something. So yeah, I still felt like I was in danger. He's at home, you know, and I don't know what he's going to get.

Such testimony raises a question of fact as to whether Bucknor's actions were *purely* personal or connected, at least to some extent, with his effort to finish his

recycling route. Regardless of whether Bucknor "may have been motivated, in part, by personal malice[,]" a jury could conclude that Bucknor acted "within the scope of [ADS's] business and in furtherance of its interests." *Ga. Messenger Svc.*, supra at 152 (2). The trial court, therefore, properly denied ADS's motion for summary judgment on the respondeat superior claim. See id. (factual question remained as to whether employee of messenger service was acting within the scope of his employment when he assaulted a building security officer who had placed a "boot" on his car while he was inside the building, delivering a package).

2. ADS also argues that it was entitled to summary judgment on the Marczaks' negligent training claim. According to ADS, Bucknor's violent response to Marczak was neither reasonably foreseeable nor causally linked to any allegedly inadequate training. The trial court rejected these arguments, finding that jury questions exist as to whether ADS properly trained Bucknor with respect to customer interactions. We agree.

To establish a negligent training claim, a plaintiff must demonstrate that inadequate training caused a reasonably foreseeable injury. See *Doe v. YWCA of Greater Atlanta*, 321 Ga. App. 403, 408 (2) (740 SE2d 453) (2013); see also *Tyner v. Matta-Troncoso*, 305 Ga. 480, 488 (3) (826 SE2d 100) (2019) ("[W]ithout

6

reasonable foreseeability — a hallmark of proximate cause — there exists no genuine issue of material fact as to . . . causation."). ADS's Director of Human Resources testified that drivers are "trained to stay in the truck, roll the windows up, lock the door, contact their supervisor and not to have any altercations with customers." According to Bucknor, however, his training related solely to "operation of the truck," focusing on "the ins and outs of the truck compartments, how to pre-trip, post-trip, proper fuels to put in there, how to run the route, stuff like that[.]" Bucknor's operations manager and his supervisor similarly testified that drivers received no specific training on customer interactions, although a culture of treating customers with respect and professionalism existed, and drivers were coached about the situation if a customer complained. Given this testimony, questions of fact exist as to (1) whether driver-customer confrontations were reasonably foreseeable to ADS; (2) whether Bucknor received the training described by ADS's Human Resources Director regarding how to respond to such confrontations; and (3) whether the training he actually received was adequate.

Factual issues also remain as to the foreseeability of Bucknor's conduct. The evidence shows that in February 2018, approximately six weeks before Bucknor's altercation with Marczak, his supervisors confronted him about his failure to perform

7

certain work duties. In response, he began to argue and curse, "became unruly[,]" and walked out of the office. When one of the supervisors followed him, Bucknor told the supervisor "not to walk behind him, he isn't one to be messed with."

ADS argues that the February 2018 incident provided no notice that Bucknor would hit a customer multiple times outside of the customer's home. It notes that Bucknor had not previously been convicted of a crime, and a background check revealed no violent propensities. The Marczaks, however, were not required to prove the foreseeability of the *particular* consequences of Bucknor's behavior or the *precise* injuries sustained by Marczak. See *Remediation Resources v. Balding*, 281 Ga. App. 31, 34 (2) (635 SE2d 332) (2006). Rather, on summary judgment, they only needed to produce "some evidence of incidents similar to the behavior that was the cause of the injury at issue." Id.

Construed favorably to the Marczaks, the record shows that just six weeks before the incident here, Bucknor reacted aggressively when accused of not performing his work properly, and he warned his supervisor not to "mess" with him further. Based on this evidence, a jury could conclude that Bucknor had a similar aggressive response when Marczak confronted him about failing to pick up the bag of recycling. Although the February 2018 situation did not involve violence, a

8

question of fact remains as to whether ADS should have anticipated that Bucknor would react physically to someone who, like Marczak, continued to "mess" with him. ADS, therefore, was not entitled to summary judgment on the Marczaks' negligent training claim. See *Remediation Resources*, supra ("[A] jury could find that the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected." (citation and punctuation omitted)); see also *Ford v. Smith*, 248 Ga. App. 339, 345 (546 SE2d 346) (2001) ("Except in plain, palpable and undisputed cases where reasonable minds cannot differ as to the conclusions to be reached, questions of . . . proximate cause, including the related issue[] of foreseeability[,] . . . are for the jury.") (citation and punctuation omitted).

*Case Number A21A0181*

3. In their cross-appeal, the Marczaks argue that the trial court erred in granting summary judgment to ADS on the negligent retention claim. Liability for negligent retention arises when an employer retains an employee who "the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's tendencies or propensities that the employee could cause the type of harm sustained by the plaintiff." *Munroe v. Universal Health Svcs.*, 277 Ga.

9

861, 863 (1) (596 SE2d 604) (2004) (punctuation omitted). See also OCGA § 34-7-20 ("The employer is bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency.").

To avoid summary judgment on this claim, the Marczaks needed to present evidence that ADS retained Bucknor as an employee, despite either actual or constructive knowledge that he posed a reasonably foreseeable risk of causing the type of harm suffered by the Marczaks. See *Munroe*, supra; *Hardison*, supra at 707. The trial court concluded that ADS had no such knowledge here. As discussed in Division 2, however, Bucknor's February 2018 response to his supervisor creates factual questions as to ADS's knowledge, particularly as to whether ADS should have anticipated that Bucknor would react violently and aggressively during an extended confrontation regarding his work performance.

Given the factual issues, the jury must resolve this question of knowledge. Accordingly, the trial court erred in granting summary judgment to ADS on the Marczaks' negligent retention claim. See *Hardison*, supra at 708; *Remediation Resources*, supra.

*Judgment in Case No. A21A0180 affirmed, and judgment in Case No. A21A0181 reversed. Dillard, P. J., and Colvin, J., concur.*

10